Robinson, J.
 

 The petition in this case recites that the relator on the 25th day of April, 1925, filed with the respondent a written application for the registration of a motor vehicle, together with a. tender of the sum of $6, alleges that the $6 was the fee and taxes required by law to accompany the application; that he requested the respondent to register said motor vehicle and issue to him a, certificate of registration and license plates; and that the respondent, contrary to the duty enjoined on him by law, refused to register the motor vehicle, and refused to issue the certificate and license plates therefor, for the reason that the fees and taxes tendered were not the fees and taxes required by law, and the petition prays for a writ of mandamus requiring respondent to issue the certificate and plates.
 

 To this petition the respondent filed a general demurrer, and thus are raised many questions involving House Bill No. 44, known' as the “Gasoline Tax Bill,” decisions of all of which are necessary for the determination of this case.
 

 Provision by statute had theretofore existed requiring the payment of a tax upon the operation
 
 *593
 
 of motor vehicles upon the public highways of the state. ¡Sections 6292 and 6295, General Code.
 

 House Bill No. 44 amended those sections, in general reducing the tax upon such motor vehicles, but for the calendar year 1925, by reason of the repeal of the provisions contained in the original sections reducing the tax for the operation of motor vehicles after April 1st, it acted as an increase for the relator, and it is the contention of relator that, but for the other provisions of House Bill 44, the amendment to Sections 6292 and 6295 of the General Code would not have been enacted by the General Assembly, and that, if House Bill No. 44 be unconstitutional, the amendments to Sections 6292 and 6295; General Code, having been made because of the other provisions of House Bill No. 44, would not be separable therefrom, and would be for that reason also unconstitutional and void; that, if not unconstitutional, House Bill No. 44 is subject to the referendum and therefore does not go into immediate effect; that original Sections 6292 and 6295 of the General Code were therefore in full force and effect on the 25th day of April, 1925.
 

 That original Sections 6292 and 6295 of the General Code were “laws providing for tax levies” was definitely decided by this court in the case of
 
 Saviers
 
 v.
 
 Smith, Sec’y. of State,
 
 101 Ohio St., 132, 128 N. E., 269. The only change in those sections is a reduction in the amount of tax exacted. If, then, there is any merit in the contention of the relator, it must be because other provisions of House Bill No. 44 conflict with some provision of the Constitution or are subject to the referendum.
 

 
 *594
 
 Is the tax levied by the provisions of House Bill No. 44 a tax upon property, and therefore in violation of Section '2 of Article XII of the Constitution, requiring property to be taxed by a uniform rule at its tru© value in money?
 

 The act is entitled:
 

 “An act to provide for the adequate maintenance of the public highways and streets of the state, to supplement existing revenues available for road and street maintenance and repair by the
 
 levy of an excise tax upon the sale of motor vehicle fuel,
 
 and the appropriation of the proceeds thereof, and to transfer to the state the duty of maintaining the entire main market road and intercoumty highway systems thereof and to amend Sections 6292 and 6295 of the General Code.”
 

 Section 1 of the act provides that the word “dealer” shall include persons, firms, etc., who import or cause, to be imported into the state motor vehicle fuel for
 
 use, distribution,
 
 or
 
 sale in Ohio,
 
 and persons, firms, etc., who produce, refine, prepare, distill, manufacture, or compound such motor vehicle fuel
 
 for use, distribution, or sale in Ohio,
 
 and provides that when any such person, firm, etc., import such motor vehicle fuel into the state and sell the same in tank car lots, or in its original containers, to any purchaser for use, distribution, or sale and delivery, then the purchaser and not the seller shall be deemed the dealer.
 

 Section 2 of the act, after stating the purposes for which the revenue is to be raised, provides that “There is hereby levied and imposed on the
 
 sale
 
 or
 
 use
 
 of each gallon of motor vehicle fuel
 
 *595
 

 sold
 
 or
 
 used
 
 by any dealer, as herein defined, within the state of Ohio, an
 
 excise taco
 
 of two cents,” and exempts from taxation motor vehicle fuel “sold in tank ear lots
 
 to be used
 
 wholly for purposes other than propelling motor vehicles on the public highway,” motor vehicle fuel exported or sold for exportation from the state of Ohio to any other state, or to any foreign country, and motor vehicle fuel sold by a dealer to the United 'States government.
 

 Section 6 provides that each dealer shall pay to the treasurer of the state the excise tax due on the
 
 sale
 
 or
 
 use
 
 of motor vehicle fuel
 
 .sold
 
 or
 
 used
 
 by him in the preceding calendar month.
 

 Section 9 provides that any person, firm, association, etc., who shall
 
 use,
 
 any motor vehicle fuel on which the tax has been paid for the purpose of operating or propelling stationary gas engines, tractors not used on highways, motor boats, or aircraft, or who shall use any such fuel upon which the tax has been paid for cleaning or dyeing, or
 
 any other purpose than the propulsion of motor vehicles
 
 operated or intended to be operated in whole or in part upon the highways of the state, shall be reimbursed to the extent of the amount of the tax so paid on such motor vehicle fuel, and provides the manner of reimbursement.
 

 The act does not lay a tax of two cents per gallon upon gasoline and other volatile and inflammable liquids derived from petroleum as such, but only upon gasoline and other volatile and inflammable liquids derived from petroleum when
 
 used, distributed,
 
 or
 
 sold in Ohio for motor vehicle fuel in motor vehicles, used or to be used in whole
 
 
 *596
 

 or in part upon the highways and streets of the state.
 
 The tax is upon the enjoyment of the privilege of using motor vehicle fuel in traveling upon the highways and streets of the state, and comes clearly within the definition of an excise tax as defined by this court in the case of
 
 Saviers
 
 v.
 
 Smith,
 
 supra:
 

 “An excise is a tax imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege, and by the provisions of Section 10, Article XII of the 'Constitution, specific authority has been conferred for the levying of such a tax.”
 

 In the same case this court further declared:
 

 “Under the general grant of legislative power conferred by Section 1, Article II of the Constitution the Legislature may tax rights, privileges, and franchises.”
 

 This court is unanimously of the opinion that the act does not levy a property tax, and does levy an excise tax, and does not come within the inhibition of Section 2 of Article XII of the Constitution.
 

 Upon the question whether the tax imposes a burden upon interstate commerce, we are content to follow the decisions of the United States Supreme Court in the cases of
 
 Texas Co.
 
 v.
 
 Brown,
 
 258 U. S., 466, 42 S. Ct., 375, 66 L. Ed., 721,
 
 Sonneborn Bros.
 
 v.
 
 Cureton. Atty. Gen.,
 
 262 U. S., 506, 43 S. Ct., 643, 67 L. Ed., 1095,
 
 Ashren, Atty. Gen.,
 
 v.
 
 Continental Oil Co.,
 
 252 U. S., 444, 40 S. Ct., 355, 64 L. Ed., 654, and
 
 Bowman. Atty. Gen.,
 
 v,
 
 Continental Oil Co.,
 
 256 U. S., 642, 41 S. Ct., 606, 65 L. Ed., 1139, wherein it was held in substance that where interstate shipments have
 
 *597
 
 reached their destination, and have become a part of the stock of the consignee, their interstate character no longer attaches, and the goods are subject to state legislation.
 

 The contention that the act violates the constitutional provision that no bill shall contain more than one subject may be successfully answered by stating that the subject and only subject of this bill, including the amendments to Sections 6292 and 6295 of the G-eneral Code, is the creation of a fund for the maintenance and repair of the highways and streets of the state; that the tax upon the use, sale, and distribution of motor vehicle fuel is the means whereby the fund is created; and that the appropriation to the department of highways and public works of the state, and to the various political subdivisions of the state, is the distribution of that fund to accomplish the single purpose of the enactment, to wit, the maintenance and repair of the highways and streets of the state, counties, and municipalities.
 

 The contention that the act is a tax on the state and its political subdivisions, in that the motor vehicle fuel used by the state or political subdivisions in state-owned and subdivision-owned machines is not exempt from the payment of such taxation, is answered by the cases of
 
 State ex rel.
 
 v.
 
 Cappeller, 39
 
 Ohio St., 207, and
 
 State ex rel.
 
 v.
 
 Board of Public Works,
 
 36 Ohio St., 409, wherein this court held:
 

 “The state is not bound by the terms of a general statute, unless it be so expressly enacted.”
 

 None of the contentions, hnwever, thus far an
 
 *598
 
 swered, was relied upon with any confidence by the relator, and he states in his brief:
 

 “This action, brought by the plaintiff, was filed for the express purpose of having a judicial determination of the question: ‘Is Substitute House Bill No.
 
 4A,
 
 Mr. Brown, passed by the Eighty-Sixth General Assembly and put in effect by the tax commission of the state of Ohio immediately following its passage, subject to a referendum by the people of the state of Ohio, and therefore not in effect for a period of 90 days after its passage, or is it in immediate effect?’ ”
 

 The contention that that portion of Section 2 of the act, “for the purpose of providing revenue for maintaining the main market roads and inter-county highways of this state in passable condition for travel, for repairing the damage caused to such highway system by motor vehicles used on the same,
 
 for widening existing surfaces on such highways where such widening is> rendered necessary by the volume of motor veMcle traffic thereon ”
 
 authorizes the expenditure of a portion of this fund for other than current expenses, and that the appropriation of the fund is therefore in part an appropriation for other than current expenses, is the only question in this case which has given this court any concern.
 

 Section 1, Article II of the Constitution of Ohio, provides:
 

 “The legislative power of the state shall be vested in a General Assembly consisting of a Senate and House of Bepresentatives but the people reserve to themselves the power to propose
 
 * * *
 
 laws * * * and to adopt or reject
 
 *599
 
 the same at the polls on a referendum vote as hereinafter provided. They also reserve the power to adopt or reject any law, section of any law or any item in any law appropriating money passed by the General Assembly, except as hereinafter provided. ’ ’
 

 Section
 
 Id,
 
 which is an exception thereto, reads:
 

 “Laws providing for tax levies, appropriations for the current expenses of the state government and state institutions * * *. The laws mentioned in this section shall not be subject to the referendum.”
 

 That this is a law “providing for tax levies” must be and was'conceded in the argument of this case, and this court is in accord upon that proposition.
 

 The question whether the appropriation of the fund to be raised for the period of two years is exempt, from the referendum, under the provision “appropriations for the current expenses of the state government and state institutions,” is answered when it is determined whether the act appropriates the fund or any portion thereof for purposes other than current expenses. If the fund be appropriated for expense other than current expense, the appropriation is subject to the referendum; if not, it is exempt from the referendum.
 

 The phrase “current expenses” does not seem to have been defined by this court, nor, indeed, satisfactorily defined by any court.
 

 17 Corpus Juris, 408, defines it thus:
 

 “Incidental expenses; ordinary expenses; running expenses; any continuing, regular expenditures in connection with the carrying on of busi
 
 *600
 
 ness; continuing’ regular expenditures. As applied to a railroad, the term will include expense occasioned by repairs and the purchase of materials for the improvement of the road; expenses incurred within a reasonable time. ’ ’
 

 The 'Supreme Court of the state of California, in
 
 Babcock
 
 v.
 
 Goodrich,
 
 47 Cal., 488, held:
 

 “ ‘Current expenses of the year,’ as used in a statute authorizing a county board of supervisors to levy a tax for the ‘current expenses of the year,’ should be construed to mean the ‘expenses of the current year.’ ”
 

 The Supreme Court of Missouri, in
 
 State ex rel. Egger
 
 v.
 
 Payne, Collector of Revenue,
 
 151 Mo., 663, 52 S. W., 412, held:
 

 ‘ ‘ Current county expenditures do not mean county expenditures for years other than the year for which the taxes are levied.”
 

 The Supreme Court of Kansas, in
 
 State ex rel. Reed
 
 v.
 
 Commrs. of Marion County,
 
 21 Kan., 419, held that the erection of county buildings is not “current expenses” of a county, but is an extraordinary and exceptional expense. When permanent county buildings are once erected and completed, the benefits to the county are permanent and continuous.
 

 Other decisions of other courts, like the decisions above quoted, are definitions of the phrase as used in particular statutes, and are not helpful in the determination of the definition of the phrase as used in our Constitution.
 

 If the term “current expenses,” as used in our Constitution, were to be interpreted as the same phrase was interpreted by the California court,
 
 *601
 
 it is difficult to conceive of a class of appropriations that would not come within the exception. We are of opinion that there was some purpose in its use in our Constitution.
 

 Our conception of the phrase, as used in our Constitution, is that “current expenses,” in addition to including the expenses incident to officering and maintaining the state government, includes the preserving’ in repair and maintaining’ of the property of the state government, and, as applied to roads, includes the maintaining and repairing thereof, as distinguished from new construction. We believe this is the commonly accepted definition of the phrase, and we hold that it was in this sense that the makers of the Constitution used it in Section
 
 Id
 
 of Article II of the Constitution of Ohio.
 

 That brings us then to the determination of the question whether the act authorizes the expenditure for other than road maintenance and repair of any of the money appropriated in the act.
 

 As pointed out earlier in this opinion, the act .is entitled “An act to provide for the adequate
 
 maintenance
 
 of the public highways and streets of the state, to supplement existing revenues available for road and street
 
 maintenance
 
 and
 
 repair
 
 by the levy of an excise tax * * * and to transfer to the state the duty of
 
 maintaining
 
 the entire main market road and inter-county highway systems,” and were it not for the fact that in Section 2 of the act, in defining the purposes for which the revenue is raised, the Legislature included, as part of its maintenance and repair, “widening existing surfaces on such highways
 
 *602
 
 where such widening is rendered necessary by the volume of motor vehicle traffic thereon,” there' could be no question that it was the intention of the Legislature to appropriate this fund solely for the purpose of maintenance and repair — current expenses of the government.
 

 The appropriation of $50,000 to the gasoline tax rotary fund, to be used in refunding taxes paid upon the sale of gasoline not used by the purchaser as motor vehicle fuel in part upon the highways and streets of the state, is clearly an appropriation for current expenses.
 

 In appropriating 30 per cent, of the gasoline tax excise fund to the municipalities of the state, the Legislature, in the same paragraph, limited its use by providing that it “shall be used by such municipal corporations for the
 
 sole purpose of mamtaimng and repmring
 
 the public streets and roads within such corporation,” and in the next-sentence provided:
 

 “Wherever a municipal corporation is on the line of an intercounty highway or main market road, one-sixth of the amount so paid to any municipal corporation shall be used by such municipal corporation for the
 
 sole purpose of maintaining and repairing
 
 such streets and roads within such municipal corporation.”
 

 In appropriating 25 per cent, of such gasoline tax excise fund to the counties of the state, the Legislature, in the same paragraph, limited its use by the provision that it “shall be used for the
 
 sole purpose of mc&ntaining cmd repairing
 
 the county system of public roads and highways within such counties,” and in appropriating 45 per cent.
 
 *603
 
 of such gasoline tax excise fund to the department of highways and public works of the state, the Legislature, in the same paragraph, limited its use by the provision “for the purpose of
 
 maintaining, repairing, and keeping in passable condition for travel
 
 the roads and highways of the state now or hereafter required by law to be
 
 maintained
 
 by the department of highways and public works of this state,” and by the provision that in the fiscal year 1925-1926 not less than $1,000,000, and in the fiscal year 1926-1927 not less than $1,500,000, shall be expended for the purposes of Section 13 of the act.
 

 ¡Section 13 provides:
 

 “As soon as this act shall take effect and funds become available, and as soon as it is practicable to organize proper working forces, the director of highways and public works shall take over for maintenance purposes as hereinafter defined, such mileage of the present system of main market roads and inter-county highways outside of incorporated municipalities as have not been constructed by the state or taken over by the state for
 
 maintenance, provided that all such portions of the inter-county highway system not at present under state maintenance, be first improved by the county to an extent which in the opinion of the director of highways and public works will permit of economical maintenance for the purpose of making them passable to traffic.
 

 “From the time such roads and highways are taken over, the director of highways and public works shall
 
 maintain
 
 said roads and highways, and the respective counties and townships of the
 
 *604
 
 state ill which such roads and, highways axe located shall thenceforth be relieved of the duty of the
 
 maintenance
 
 thereof, but for the purpose of this section,
 
 ^maintenance
 
 shall not be construed to include the construction of any new bridges or culverts or the replacement of any bridges or culverts destroyed by the elements or by natural wear and tear,
 
 nor amy construction work changing the 'type of construction existing on said roads at the time the same are taken over
 
 in accordance with the provisions of this section.”
 

 Then follows a provision that this act shall not be construed to prevent the authorities of the county or township from cooperating with the state in the construction, maintenance, or repair of a main market road under other provisions of the statute.
 

 Section 14 limits all appropriations to the period expiring June 30, 1927, and following the limitation occurs the paragraph which has given the minority of this court much concern:
 

 “The sums so appropriated shall be used by such municipal corporations and counties and by the department of highways and public works for the purposes set out in Sections 2 and 12 of- this act and for no other purpose whatsoever.”
 

 As has been seen, Section 12 limits every portion of such appropriation, except the $50,000 rotary fund, about which no question can be raised, to the expenditure “for maintaining and repairing” and “maintaining, repairing, and keeping in passable condition for travel.”
 

 The Legislature having entitled the act one to provide funds for maintenance and repair, and
 
 *605
 
 having specifically provided for what purpose each separate portion of the appropriation is to be expended, and having in each instance provided that that expenditure should be either “for maintaining and repairing” or “for maintaining, repairing, and keeping in a passable condition,” the general provision contained in Section 14, which incorporates the provisions of Section 2 therein by reference, is not effective to broaden or extend the purpose specifically mentioned in the appropriation of the various portions of the fund, even though Section 2 required the construction that it authorizes an unlimited widening of existing highway surfaces, and while the paragraph “for widening existing surfaces on such highways where such widening is rendered necessary by the volume of motor vehicle traffic thereon,” standing alone, is capable of such construction, where the necessity for such widening is made to appear, yet taken in connection with the title of the act, in connection with the specific definition of the purpose of each appropriation found in each separate paragraph making the appropriation, the majority of this court are of opinion that such a construction would violate the rule that specific provisions are controlling over general provisions, and violate the rule that provisions of a definite and certain meaning are controlling over provisions of an indefinite and uncertain meaning.
 

 We therefore are of opinion that the department of highways and public works, the counties and the municipalities of the state, are limited in the expenditure of the respective appropriations made to them in this act to maintenance and repair, and
 
 *606
 
 that the power of such department, or subdivisions, to use this particular fund for the purpose of widening the surfaces of the highways, must be measured by whether such widening constitutes maintenance or repair, or, on the other hand, is of such a character as to amount to new construction; that the expense of maintenance, repair and keeping the system of public roads and highways in passable condition for travel is current expense, and, since the act as a whole contemplates no other use of the fund, that all the appropriations of the act come within the exception of Section
 
 Id
 
 of Article II to Section 1 of Article II of the 'Constitution.
 

 The demurrer to the petition is sustained.
 

 Writ denied.
 

 Jones, Matthias, Day, Allen, and Kinkade, JJ., concur.