FRED V. HEINKEL, RUSSELL J. ROSIER, H. E. KLINEFELTER and JAMES M. SILVEY, JR., Appellants, v. WALTER H. TOBERMAN, Secretary of State of the State of Missouri, Respondent, No. 41782—226 S. W. (2d) 1012.

Court en Banc, February 13, 1950.

*A. D. Sappington, William W. Beckett* and *Howard B. Lang, Jr.,* for appellants.

62

*J. E. Taylor,* Attorney General, *Gilbert Lamb* and *C. B. Burns, Jr.,* Assistant Attorneys General, for respondent.

64

TIPTON, J.—The appellants' action seeks to enjoin Walter H. Toberman, as Secretary of State of the State of Missouri, from submitting a referendum to a vote of the people on "House Committee Substitute for House Bill No. 185," enacted by the Sixty Fifth General Assembly and approved by. the Governor on August 27, 1949. The circuit court dismissed appellants' petition because it failed to state a claim upon which appellants are entitled to obtain injunctive relief.

The statute in question will hereafter be referred to as house bill 185. It provides that, in order to provide funds for the construction and maintenance of roads and highways and to pay the principal and interest on road bonds, a state tax is levied to produce a sum equal to four cents on each gallon of motor fuels for the privilege of driving motor vehicles upon the state highways. This act repeals the present two cent tax on motor fuels. Among other things, this act provides that the state highway commission is authorized to locate and construct low type highways to be known as "state rural roads"; it is further authorized to "provide for the expenditure by counties and other political subdivisions, under the supervision and direction of the Commission, and under rules and regulations provided by the Commission for the administration of such supervision and direction, of state rural road funds equivalent to the state revenues derived from one cent (1¢) per gallon of state taxes upon motor vehicle fuels, less" (1) the proportionate share of the cost of collection; (2) the proportionate share of refunds that are authorized by law; and (3) the cost and expense of the state highway commission and the state highway department in administering sections 35 to 43.

Subsequent sections deal with the details of administering and carrying out the act. An attempt was made to pass an emergency clause so as to make the act effective after its approval by the governor but this attempt failed to receive a two-thirds vote in each house, as required by section 29, article 3 of our constitution.

On October 10, 1949, referendum petitions were filed with the respondent and were accepted by him. It is conceded that these petitions are in the proper form and signed by the required number of voters.

The sole issue in this case is whether house bill 185 is the kind of law that is subject to referendum under section 52(a), article 3 of the constitution of 1945. That section reads:

"A referendum may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety, and laws making appropriations for the current expenses of the state government, for the maintenance of state institutions and for the support of public schools) either by petitions signed by five per cent of the legal voters in each of two-thirds of the congressional districts in the state, or by the general assembly, as other bills are enacted. Referendum petitions shall be filed with the secretary of state not more than ninety days after the final adjournment of the session of the general assembly which passed the bill on which the referendum is demanded."

The first thing for us to determine is whether or not house bill 185 is an appropriation law. If it is, then is the state highway department which includes the state highway system a "state institution"?

Standing alone, house bill 185 is not an appropriation law. It is true it is a bill that does raise funds for the highway department and the state highway system. But there is not one word, phrase or sentence in the bill that would justify construing it as an appropriation law.

Briefly, appellants' contention is that when this bill is read in connection with section 30, article 4 of our constitution, it becomes an appropriation bill.

That section simply means that all sums of money collected from motor vehicle license fees and all taxes from the sale of motor fuels used to drive motor vehicles upon the highways of this state must first be used to pay the cost (1) of collection thereof, (2) of maintaining the commission, (3) of maintaining the highway department, (4) of any workmen's compensation, (5) of the highway retirement pay when provided by law, and (6) of the expenses of the state highway patrol. These items can only be paid from an appropriation act passed by the legislature in the same way any other appropriation act is passed. Of course, the sums so appropriated must be appro-

priated from the license fees and taxes referred to in this section. Then the balance of the funds collected from the license fees and fuel taxes go into a special fund and stand appropriated without ▮▮▮▮ legislative action, first, for the payment of the principal and interest on any state road bonds for the next succeeding twelve months, and then the balance of such fund shall be credited to the state road fund for the purpose of doing whatever is necessary to construct, maintain and repair the various types of roads in our highway system.

In the case of State ex rel. McKinley Pub. Co. v. Hackmann, State Auditor, 314 Mo. 33, 282 S. W. 1007, l. c. 1013, in speaking of section 44(a), article 4 of the 1875 constitution which, with modifications, is now section 30, article 4, we said:

"This provision makes no attempt to appropriate, without legislative action, the money to pay the maintenance expense of the highway commission. It does appropriate without further legislative action that portion of the money received from automobile license fees which remains after deducting the cost of collecting the tax and maintaining the highway commission, and it appropriates the remainder to the payment of the principal and interest of certain bonds. It makes no attempt whatever to appropriate without legislative sanction the amount needed for the expenses of the commission. Who, therefore, is to determine the amount required to maintain the highway commission? Is this to be determined by the highway commission, unhampered by legislative permission, or by the Legislature in the regular way by an appropriation act?

"Section 19, article 10, of the Constitution of Missouri, expressly provides that no money shall be paid out of the state treasury, except in pursuance of an appropriation by law. This section controls, unless modified by a later constitutional provision. It is true that section 44a, supra, does modify it as to that portion of the automobile license tax to be paid upon the principal and interest of said bonds, but that is the only modification, and there is nothing in section 44a which in any manner conflicts with, or prevents the provisions of, section 19, supra, from controlling with reference to all moneys paid out of the state treasury for the support and maintenance of the highway commission. It thus clearly appears that that portion of the license tax which is to be paid out of the state treasury for the expenses of maintaining the highway commission must, under the express provisions of the Constitution (section 19, supra), be first appropriated by act of the Legislature."

So, under section 30, article 4 of our present constitution, the cost (1) of collection, (2) of maintaining the commission, (3) of maintaining the highway department, (4) of any workmen's compensation, (5) of a retirement program for the state highway employees, and (6) of the expenses of the highway patrol, must first be appropriated

by the legislature out of "revenue derived from highway users," including all state license fees and taxes upon motor vehicle fuels. In other words, the expense of these items must be provided out of what is commonly called the motor vehicle license fees and the gasoline tax. If and when house bill 185 becomes effective, the revenue derived from the 4 cent tax on motor fuels, together with the license fees on motor vehicles, must first pay the expense of these items. To do so there must first be an appropriation act passed by the legislature for that purpose. State ex rel. McKinley Pub. Co. v. Hackmann, supra.

House bill 25 of the 65th General Assembly did enact appropriation laws to pay the above enumerated expenses (except item 5, this for the reason the legislature has not yet enacted a retirement law for highway employees). This is the same legislature that enacted house bill 185. It is only after an appropriation act is passed that the balance of the revenue derived from motor vehicle license fees and taxes upon motor vehicle fuels is credited to a special fund and stands appropriated without legislative action for the purposes of paying road bonds and for the construction and maintenance of state highways.

Even if we follow appellants' contention that we must read into house bill 185 section 30, article 4 of the constitution, we are unable to see how this bill could be considered an appropriation bill. The appellants apparently ignore the fact that these six items of expense above mentioned must first be paid out of a fund created in ▮▮▮ part by the 4 cent tax provided for in this bill and that this expense can only be paid by an appropriation of the legislature. It will not do to say that these items could be paid by the license fees only because this section of the constitution says that all revenue derived from highway users including license fees and fuel taxes make up this fund. In other words, some part of the 4 cent tax to be collected under this bill goes to pay these six items.

Appellants rely on the following cases from other states and we will briefly analyze them.

In the case of Moreton v. Haggerty, 240 Mich. 584, 216 N. W. 450, the act in question provided for a gasoline tax and also appropriated the entire fund raised by the tax for state highway purposes. The court held it was an appropriation for a state institution and therefore came within the exceptions of the referendum provision of the constitution.

In the case of State ex rel. Shade v. Coyne, 58 S. D. 493, 237 N. W. 733, the law under consideration fixed a motor vehicle license fee. The court held this law was a revenue act and it came within the exception of the referendum provision of the state constitution since it was a law necessary for the support of the state government and its existing public institutions.

In Detroit Auto Club v. DeLand, 230 Mich. 623, 203 N. W. 529, the court held that the state highway department was a state institution and the act in question appropriated money to it. Appropriation laws are not subject to referendum under the Michigan constitution.

In State ex rel. Janes v. Brown, 112 Ohio St. 590, 148 N. E. 95, the Ohio constitution provided that laws providing "for tax levies" and "appropriations for the current expenses of the state government and state institutions" are not subject to referendum. A 2 cent tax was levied upon the sale of gasoline to be used by motor vehicles upon the highways and the proceeds therefrom were appropriated for highway purposes. The court held, the law provided for tax levies and it appropriated the funds derived therefrom for current expenses of the state government, also that the state highway system was a state institution and, therefore, the law was not subject to referendum.

In State ex rel. Linn v. Romero, 53 N. M. 402, 209 P. 2d 179, the New Mexico legislature enacted a state statute raising the gasoline tax to 7 cents for the purpose of providing a fund for the construction and maintenance of state highways and to pay state bonds already sold. A property tax had previously been enacted to pay these bonds. The court held that the act in question was "for the payment of the public debt" and came within the exception of the referendum provision of the constitution. The opinion states that the court would not decide whether the state highway commission is a state institution or whether the law provides for the public peace, health and safety which were also within the exceptions of the referendum.

In Winebrenner v. Salmon, 155 Md. 563, 142 A. 723, the question before the court was whether the funds collected by an act of the legislature which increased the gasoline tax 1½ cents a gallon were to be put in the "lateral road gasoline tax fund" and the proceeds distributed monthly to the state road commission for the construction of highways was subject to a referendum vote of the people. That court said, "Assuming that it is not sufficient in itself to authorize the withdrawal from the treasury of the state the money collected under its provisions," * * * yet "that act and the Budget Act are in pari materia, and must be construed together as though they constituted one act." The act complied with the budget provision. It was ruled that it was an appropriation act and, therefore, not subject to referendum.

In State ex rel. Anderson v. Howell, 106 Wash. 542, 181 P. 37, the act in question was a revenue law for the support of the state highways. The fees to be collected under it were to go into a fund to be known as the "Motor Vehicle Fund," and the funds were to be appropriated in certain ways. The same legislature by another act appropriated the money raised by these fees. The court held that the act in question must be construed in pari materia with the appropriation

act and the emergency clause passed with the act in question was for the support of the state's "existing public institutions"; therefore, the act came within the exception to the referendum provision of the constitution.

Assuming, for the sake of argument only, that we should read into house bill 185 section 30, article 4, supra, then none of the above cases from other jurisdictions relied upon by appellants support them, this for the reason that appellants throughout their argument treat section 30, article 4, as if the entire tax collected by house bill 185 stands appropriated without legislative action to the state highway system, whereas it is only that fund that remains after appropriations are made by the legislature for the six items previously discussed. This is not true in the cases relied upon by appellants which we have just discussed.

If by any stretch of the imagination house bill 185 could be considered an appropriation law even when read in connection with section 30, article 4, supra, then it would be a general and not a special appropriation. "It would be a stretch of construction to say that the framers of the referendum clause in the Constitution meant anything else than laws which *directly* set apart certain sums for certain purposes. If 'appropriations' were used in the broader sense, so as to include laws which authorize the expenditure of money, * * * it could have been much more definitely and specifically stated." State ex rel. Harvey v. Linville, 318 Mo. 698, 300 S. W. 1066, l. c. 1069.

The word "appropriations" could not, by the ordinary use of the term nor by its apparent significance in the constitution have the construction as contended by the appellants.

We have no hesitancy in holding that house bill 185, even construed with section 30, article 4, is not an appropriation law within the meaning of the referendum provision of our constitution. See section 52, article 3 of the constitution.

From what we have said, it is not necessary to rule whether it is an appropriation law "for the current expenses of the state government," or whether the highway system is a "state institution."

██ The case of State ex rel. State Highway Commission v. Thompson, 323 Mo. 742, 19 S. W. 2d 642, is controlling in reference to whether house bill 185 comes within the provisions of section 52, article 3, supra, which prohibits referendum of a law that is necessary for "the immediate preservation of the public peace, health or safety." That case ruled that the act under consideration which was passed with an emergency clause by two-thirds majority both in the house of representatives and the senate was not a law "necessary for the immediate preservation of the public peace, health, or safety." In ruling the case, we said:

"The early completion of the state highway system, the reimbursement of counties for money expended on the state highway system, the relief from congestion of traffic in areas adjacent to St. Louis and Kansas City, and a beginning of supplementary state highways in counties, are all desirable, and when accomplished will no doubt greatly contribute to the public welfare, and *indirectly* promote the public peace, health, and safety. But it cannot be affirmed that any of these things are necessary for the *immediate* preservation of the public peace, health, or safety. State v. Sullivan, 283 Mo. 546, 224 S. W. 327; State v. Becker, 289 Mo. 660, 233 S. W. 641; State v. Linville, 318 Mo. 698, 300 S. W. 1066." Loc. cit. S. W. 2d 647.

The emergency clause in house bill 185 failed to receive two-thirds majority in either the house of representatives or senate; therefore, the text of the emergency clause is not before us. However, appellants contend that this bill is not subject to the referendum because it is necessary for the immediate preservation of the public peace, health or safety.

As we said in the last cited case, the construction of these rural roads may *indirectly* promote the public peace, health and safety but it cannot be said that any ▮ of the objects set forth in house bill 185 are necessary for the *immediate* preservation of the▪ public peace, health and safety. It is a matter of common knowledge that the state rural roads cannot be constructed for many months, perhaps years, and therefore cannot be considered an emergent police measure.

From what we have said, it follows that house bill 185 does not come within any of the exceptions in section 52(a), article 3 of our constitution and, therefore, the judgment of the trial court should be affirmed. It is so ordered. All concur.