Stephen Michael MURRAY, Margaret Hermes, Henry B. Robertson, Gloria Gordon and Rebecca Wright, Plaintiffs/Respondents,

v.

The CITY OF ST. LOUIS and The Honorable Freeman Bosley, Mayor of the City of St. Louis and The Honorable Darlene Green, Comptroller, City of St. Louis, Defendants/Appellants,

Land Clearance for Redevelopment Authority of the City of St. Louis, Intervenor/Appellant.

No. 72157.

Missouri Court of Appeals, Eastern District, Division Two.

June 3, 1997.

Transfer Denied July 14, 1997.

Edward J. Hanlon, Deputy City Counselor, Tyrone A. Taborn, City Counselor, Steven R. Wild, Asst. City Counselor, St. Louis, Joann M. Tracy, Husch & Eppenberger, St. Louis, for appellants.

J. Peter Schmitz, Schmitz, Kopman, Schreiber & Kaveney, P.C., St. Louis, for respondents.

CRANE, Presiding Judge.

Defendants and intervenor appeal from the trial court's judgment on plaintiffs', defendants' and intervenor's separate motions for judgment on the pleadings in an action for declaratory judgment and injunctive relief. Plaintiffs sought a declaration regarding the validity of an ordinance which authorizes a lease of four acres of municipal park land with lessee to provide public works to improve adjacent municipal park land or, in the alternative, a declaration regarding the validity of the emergency clause in the ordinance. The trial court declared that the ordinance does not contain more than one subject matter and therefore is not invalid in its entirety, but that Section Five of the ordinance, which declares that it is an emergency measure, is invalid. The court granted further declaratory and injunctive relief in accord therewith. We reverse in part and enter judgment declaring Board Bill No. 335 to be a valid emergency measure.

*Board Bill No. 335 and the Lease*

On February 7, 1997 the Board of Aldermen of the City of St. Louis passed Board Bill No. 335 which authorizes the Mayor and the Comptroller to execute a lease (the Lease) of four acres of land located in Forest Park between the City of St. Louis (the City) as lessor and the Art Museum Subdistrict of the Metropolitan Zoological Park and Museum District of the City and County of St. Louis (Art Museum Subdistrict) as lessee. The ordinance contains five sections. Section One authorizes the Mayor and the Comptroller to enter into the Lease which is attached to the ordinance as Exhibit 1 and incorporated therein. Section Two provides that all rental payments under Section 3 of the Lease be held by the Comptroller in an account for the use and benefit of the Department of Parks, Recreation and Forestry of the City as provided in the Lease. Section Three provides for the design, installation and performance of public works as described and provided for in Section 15 of the Lease, as follows:

(a) to implement a portion of the Master Plan and increase public safety, redesign and reconstruct the intersection of Government Drive with Fine Arts Drive as a 90 degree "T" junction with improved sightlines and a pedestrian and bike path crossing; (b) in the area between the intersection of Government Drive and Fine Arts Drive and Fine Arts Drive at the western edge of the Leased Premises, install sidewalks, lighting and curbing per the Master Plan, and repair and replace as necessary: (i) all sidewalks and curbing; and (ii) drains and drain covers; (c) restore the Statue of St. Louis; and (d) replace and improve tree plantings to the west of the Existing Museum on the north side of Fine Arts Drive per the Master Plan, are hereby authorized. The cost estimated by the Board of Public Service as $499,344 shall be paid out of the payment to be made by the Art Museum Subdistrict pursuant to Section 15 of the Lease and from the funds on deposit in the hereinafter created Art Museum Subdistrict Public Works Account.

Section Four establishes an Art Museum Subdistrict Public Works Account in The Special Park Fund into which funds paid by the Art Museum Subdistrict pursuant to Section 15 of the Lease are to be deposited. Section Five provides:

This being an ordinance providing in part for public works and improvements, it is hereby declared to be an emergency measure pursuant to Article IV Sections 19 and 20 of the Charter of the City of St. Louis, and shall take effect immediately upon approval by the Mayor or its adoption over his disapproval.

The Lease obligates the Art Museum Subdistrict to pay nominal rent, make certain improvements to Forest Park (a City park in which the Art Museum is located) in the total amount of $7,000,000.00, less the cost of the Public Works, and pay $499,344.00 to the City for the design, installation and performance of Public Works as described in Section 15 of the Lease. That section provides:

15. PUBLIC WORKS. The Subdistrict shall pay to the City on or before fifteen (15) days after the execution of this Lease, the sum of $499,344 which the City will deposit in the Art Museum Subdistrict Public Works Account established in Section Four of Ordinance _____ (B.B.335) and will utilize the amounts on deposit in such account solely for the design, installation and performance of certain Public Works in Forest Park which are contemplated by and/or consistent with the Master Plan and related to the Leased Premises, to wit: (a) to implement a portion of the Master Plan and increase public safety, redesign and reconstruct the intersection of Government Drive with Fine Arts Drive as a 90 degree "T" junction with improved sightlines and a pedestrian and bike path crossing; (b) in the area between the intersection of Government Drive and Fine Arts Drive and Fine Arts Drive at the western edge of the Leased Premises, install sidewalks, lighting and curbing per the Master Plan, and repair and replace as necessary: (i) all sidewalks and curbing; and (ii) drains and drain covers; (c) restore the Statue of St. Louis; and (d) replace and improve tree plantings to the west of the Existing Museum on the north side of Fine Arts Drive per the Master Plan, are hereby authorized. Such work shall be done using materials specified by the Board of Public Service, and in accordance with detailed plans and specifications finally adopted and approved by the Board of Public Service before bids are advertised therefor. The Board of Public Service shall cause the Public Works to be performed in accordance with its customary procedures.

*Trial Court Proceedings*

On January 31, 1997, prior to passage of Board Bill No. 335, plaintiffs, Stephen Michael Murray, Margaret Hermes, Henry B. Robertson, Gloria Gordon and Rebecca Wright, who are residents, voters, and taxpayers of the City, filed a petition for a temporary restraining order, preliminary and permanent injunction, and declaratory judgment against the City, its Mayor, Freeman Bosley, and its Comptroller, Darlene Green (hereinafter collectively referred to as "the defendants"). Plaintiffs alleged in Counts I and III that the emergency clause of the ordinance violated Article IV, Section 20 and Article VI, Section 1 of the City Charter in that the contents of the ordinance did not fall within any definition of emergency. Plaintiffs sought a judgment declaring the emergency clause of the ordinance invalid, enjoining the City from entering into the Lease until the time for referendum has expired, and declaring that the ordinance does not become effective until the time for referendum has expired. Plaintiffs alleged in Counts II and IV that the ordinance violated Article IV, Section 13 of the City Charter which prohibits an ordinance from containing more than one subject. Plaintiffs requested an order declaring that the ordinance is void in its entirety and that the Lease is null and void and enjoining execution of the Lease. Defendants moved to dismiss the petition for failure to state a claim.

On February 7, 1997, the day Board Bill No. 335 was passed, plaintiffs filed a first amended petition. In it they realleged the substance of the original four counts and added a fifth count requesting that the May-

or be enjoined from signing the ordinance for ten days on the grounds that the ordinance does not contain a valid emergency clause.

Also on February 7, 1997, the Land Clearance for Redevelopment Authority of the City of St. Louis (the LCRA) filed a motion to intervene as a defendant and a motion to dismiss for failure to state a claim. The LCRA alleged that it owned twenty-six acres adjacent to Forest Park (the Arena site) to which the Art Museum Subdistrict and Art Museum Foundation had agreed to provide development assistance, including up to $4,000,000.00 in funds, under a cooperation agreement of which the Lease was one component.

The trial court granted the LCRA's motion to intervene. It denied the defendants' motion to dismiss and plaintiffs' request for a preliminary injunction.

The defendants and the LCRA filed their answers and separate motions for judgment on the pleadings with respect to the amended petition. Both the defendants and the LCRA requested that the court enter judgment that the emergency clause of the ordinance does not violate Article IV, Section 20 of the Charter and that the ordinance contains one subject matter and therefore does not violate Article IV, Section 13 of the Charter. They requested dismissal of the remainder of the amended petition. The defendants also claimed the ordinance constituted an appropriation for the current expenses of the City and was an administrative, not a legislative, ordinance.

Plaintiffs then filed a cross-motion for judgment on the pleadings. Plaintiffs requested a declaratory judgment as prayed for in Counts III and V of the amended petition, which asserted the invalidity of the emergency clause, or in the alternative, for a declaratory judgment as prayed for in Count IV of their petition, which asserted the invalidity of the ordinance on the ground that it contained more than one subject. The three motions for judgment on the pleadings were heard and taken under submission.

Thereafter, the trial court entered its judgment and memorandum opinion. It found that the ordinance does not contain more than one subject matter and is therefore not invalid in its entirety. However, it held that the ordinance does not provide for public work and improvements and that the emergency clause in Section Five is invalid. It granted declaratory and injunctive relief based on this finding. The exact text of the judgment is as follows:

> [T]hat: (1) Board Bill No. 335 does not contain more than one subject, and therefore is not invalid in its entirety; (2) Board Bill No. 335 is not an ordinance providing for public work or improvements within the meaning of Article IV, Section 20 of the City Charter, and thus section five of the Board Bill No. 335 is invalid; (3) defendant the Honorable Freeman Bosley's approval of [sic] Board Bill No. 335 is void and a nullity; (4) defendants the Honorable Freeman Bosley and the Honorable Darlene Green are enjoined from signing the lease authorized by Board Bill No. 335 until 30 days after the Mayor's approval of Board Bill No. 335, should the Mayor approve said bill, if they have not already signed the lease; and (5) defendant The City of St. Louis is enjoined from performing any term of the lease authorized by Board Bill No. 335 until 30 days after the Mayor's approval of Board Bill No. 335, should the Mayor approve said bill, if the Mayor and Comptroller have already signed the lease.

*Issues on Appeal*

Defendants and the LCRA appeal, claiming error in the declaration that Section Five of the ordinance is invalid and the granting of further declarations and relief based on that finding. Plaintiffs have not appealed the declaration that the ordinance does not contain more than one subject. On the joint motion of defendants and the LCRA, we have expedited this appeal.

Defendants and the LCRA both assert the trial court erroneously declared and applied the law in declaring that the ordinance is not a proper emergency measure within the meaning of Article IV, Section 20 of the City Charter. They claim it is an emergency measure which became effective upon its approval because 1) it provides for public work

and improvements and 2) it was declared to be an emergency measure by the Board of Aldermen. They also argue it is an emergency measure because it makes an appropriation for the current expenses of the City. Defendants further claim that the ordinance is an administrative, as opposed to a legislative, ordinance, which is not subject to referendum.

Plaintiffs take the position, adopted by the trial court, that the ordinance was not validly declared to be an emergency measure because it provided only in part for public works and primarily concerned the Lease. Plaintiffs argue that the ordinance must wholly concern public works or improvements before it may be declared an emergency measure.

*Discussion*

■■■ As a general rule an ordinance takes effect from and after the date of its passage unless otherwise specified by statute or charter. 1 Mo. LOCAL GOVERNMENT LAW, § 4.52, at 4–28 (Mo. Bar 2d ed. 1986 & Supp.1990). Voters of a municipality have no inherent right to referendum on municipal legislation; they have only such right to referendum as conferred by statute or charter. 1 CHESTER JAMES ANTIEAU AND JOHN MICHAEL ANTIEAU, ANTIEAU'S LOCAL GOVERNMENT LAW § 4T.33 (Supp Nov. 1993 & Supp April 1997).

The people of the City have reserved in their Charter the power of referendum as to any ordinance except an emergency measure as defined in Article IV, Section 20 of the City Charter. Art. VI, Sec. 1. Article IV, Section 20 defines an emergency measure as follows:

Section 20 Emergency ordinance defined.

**An emergency measure is any ordinance** necessary for the immediate preservation of the public peace, health or safety, **or providing for public work or improvements of any kind or repairs thereof**, or establishing a benefit or taxing district or a sewer district, or a joint sewer district, **and declared to be an emergency measure;** any ordinance calling or providing for any election or vote by or submission to the people, any ordinance making an appropriation for the payment of principal or interest of the public debt, or for current

expenses of the city government; any general appropriation ordinance; or any ordinance fixing any tax rate; but no ordinance granting, enlarging or affecting any franchise or amending or repealing any ordinance adopted by the people under the initiative shall be an emergency measure.

(Emphasis added).

The Charter also provides that the mayor may approve an emergency measure immediately after passage, without the customary ten day waiting period for non-emergency ordinances. Art. IV, Sec. 17. Once approved, an emergency ordinance goes into immediate effect, without the customary thirty-day waiting period after mayoral approval. Art. IV, Sec. 19.

There is no dispute that the ordinance provides in part for public work or improvements and that the ordinance was declared to be an emergency measure. The issue is whether an ordinance which provides "in part" for public work and improvements falls within the Article IV, Section 20 definition.

Until 1927 the City Charter defined "emergency measure" as follows:

Sec. 20. An emergency measure is any ordinance necessary for the immediate preservation of the public peace, health, or safety and declared to be an emergency measure; any ordinance calling or providing for any election or vote by or submission to the people; any ordinance making an appropriation for the payment of principal or interest of the public debt, or for current expenses of the city government; any general appropriation ordinance; or any ordinance fixing any tax rate; but no ordinance granting, enlarging or affecting any franchise or amending or repealing any ordinance adopted by the people under the initiative shall be an emergency measure.

Art. IV, § 20 (1914).

On April 5, 1927 City voters adopted Amendment Number Three to the Charter. It amended Article IV, Section 20 by inserting the words "or providing for public work or improvements of any kind or repairs thereof, or establishing a benefit or taxing

district or a sewer district, or a joint sewer district," in the first clause before the words, "and declared to be an emergency measure." *See State ex rel. Harry L. Hussman Refrigerator and Supply Co. v. City of St. Louis,* 319 Mo. 497, 5 S.W.2d 1080, 1084 (banc 1928).

The *Hussman* case is a seminal case which distinguishes the power of referendum conferred by a city charter with respect to municipal legislation from the power of referendum found in the state constitution with respect to legislation passed by the state legislature. At the time *Hussman* was decided, the state constitution conferred on the people of the state a power of referendum as follows:

> The legislative authority of the state shall be vested in a legislative assembly, consisting of a senate and house of representatives, but the people reserve to themselves power to propose laws and amendments to the Constitution, and to enact or reject the same at the polls, independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the initiative, .... The second power is the referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety and laws making appropriations for the current expenses of the state government, for the maintenance of the state institutions and for the support of public schools) either by the petitions ... or by the legislative assembly, as other bills are enacted.

Mo. CONST. OF 1875, art. IV, § 57 (1908).[1] Cases which construed this provision held that, while great weight is to be given to the legislative declaration that a law is necessary to the immediate preservation of the public peace, health or safety, whether an act is actually necessary for the immediate preservation of the public peace, health or safety is a judicial question. *See State ex rel. Westhues v. Sullivan,* 283 Mo. 546, 224 S.W. 327, 333–39 (banc 1920); *State ex rel. Pollock v. Becker,* 289 Mo. 660, 233 S.W. 641, 644 (banc 1921); *State ex inf. Barrett ex rel. Callaghan*

*v. Maitland,* 296 Mo. 338, 246 S.W. 267 (banc 1922); *Fahey v. Hackmann,* 291 Mo. 351, 237 S.W. 752, 761 (banc 1922).

In *Hussman* the relators challenged an ordinance adopted by the St. Louis Board of Aldermen which provided for street improvements and established a taxing district to finance the improvements. The relators first attacked the Charter amendment process. The court held that the Charter could be and was properly amended by the April 5, 1927 vote. *Id.* 5 S.W.2d at 1081–85. The court next addressed the question of whether Amendment Number Three illegally delegated to the Board of Aldermen the determination of what may constitute emergency measures. The court held that Article IV, Section 20, as amended by Amendment Number Three, "does not delegate to the board of aldermen the broad determination of what shall constitute emergency measures, but in very definite terms indicates what may be deemed such." *Id.* at 1086. The court recognized that in cases concerning the right of referendum reserved to the people by art. IV, § 57 of the Constitution, it had held that the determination of "whether or not a law was 'necessary for the immediate preservation of the public peace health or safety' was a matter for judicial determination, and such was the extent of our ruling." *Id.* at 1086. The court continued: "We did not undertake to withdraw any other question from the field of legislative determination, and the other exceptions named in the same section are unaffected by our rulings." *Id.* It held that while cases construing art. IV, § 57 could be used by analogy to construe the Charter clause "any ordinance necessary for the immediate preservation of the public peace, health or safety," these cases are inapplicable to the Charter clause dealing with public works and taxing districts. *Id.* This clause is a separately defined emergency measure and is not required to fall within the class of laws "necessary for the immediate preservation of the public peace, health or safety" as set out in art. IV, § 57 of the state constitution. *Id.*

1. This provision was the basis for Mo. CONST. art. III, §§ 49, 50, 52(a)–53.

■ The *Hussman* court next considered whether Amendment Number Three created an exception to the referendum power which was not specified in the state constitution. The court held that art. IV, § 57 reserves the power of referendum only to *acts of the state legislative* assembly and not to acts of the City of St. Louis. *Id.* at 1086 (emphasis the court's). Thus the power of referendum reserved to the people of the City with respect to ordinances is that which is contained in the City Charter. It is not subject to or restricted by the state constitutional power of referendum which applies to state statutes.

The Missouri Supreme Court has since applied the rule set out in *Westhues*, 224 S.W. at 339, to charter emergency clauses defining emergency as relating to the immediate preservation of the public peace, health, or safety. *Padberg v. Roos*, 404 S.W.2d 161, 170 (Mo. banc 1966) (St. Louis County Charter); *State ex rel. Tyler v. Davis*, 443 S.W.2d 625 (Mo. banc 1969) (Kansas City Charter).

■ In cases decided under clauses defining emergency as an immediate threat to the public peace, health, or safety, the question for the court usually is whether an emergency in fact exists and whether it is immediate. *See, e.g. Westhues*, 224 S.W. at 339 (an emergency clause in the then recently enacted Workmen's Compensation Act was not sufficient in form or substance to support a finding that its immediate effectiveness was "necessary for the immediate preservation of the public peace, health or safety."); *Fahey*, 237 S.W. at 761 (that soldier and sailor beneficiaries named in an act authorizing the issuance of $15,000,000 of State of Missouri World War I soldier bonus bonds were in "dire need of the partial compensation," did not adequately declare "a 'peace, health or safety' clause" emergency within the meaning of the constitution); *State ex rel. State Highway Commission v. Thompson*, 323 Mo. 742, 19 S.W.2d 642, 647 (banc 1929) (the early completion of the state highway system and the relief of traffic congestion were not necessary for the *immediate* preservation of the

public peace, health or safety); *Tyler*, 443 S.W.2d at 631–32 (rioting in Kansas City was held to constitute an emergency which can authorize an emergency measure to impose a utility tax to raise funds for police and social service programs); *Osage Outdoor Adver. v. State Highway Comm'n*, 687 S.W.2d 566, 569–70 (Mo.App.1984) (bill regulating outdoor advertising was an emergency measure where federal law required state to pass new legislation before March 31, 1972 or lose a portion of federal highway appropriation).

In cases involving other defined emergencies, these questions are not before the court because the legislative body has already defined the activity as an emergency. *Hussman*, 5 S.W.2d at 1086–87. Rather the question is whether the legislation falls within the defined class, that is, whether it fixes a tax rate, makes an appropriation, *et cetera*. *See State ex rel. Asotsky v. Regan*, 317 Mo. 1216, 298 S.W. 747, 749 (banc 1927) (an ordinance which imposed an occupation tax on cigarette vendors in the amount of 20% on the retail price of all cigarettes sold and declared itself to be an emergency measure within the meaning of the Kansas City Charter, which included in its definition of emergency: "any ordinance fixing any tax rate or assessment," imposed an assessment within the meaning of the Charter and was not subject to referendum). *See also Heinkel v. Toberman*, 360 Mo. 58, 226 S.W.2d 1012, 1013 (banc 1950) (a bill levying a state tax on motor fuels to raise funds for the construction of highways is not an appropriation law exempt from referendum under the constitution).

The more narrow question presented by this appeal is whether Board Bill No. 335, which has some provisions which relate to a defined emergency and others which do not, constitutes an emergency ordinance. Missouri cases construing the referendum clause of the state constitution offer guidance by analogy.

■ The Missouri Constitution does not provide for a referendum as to part of a bill.[2] The Missouri Supreme Court has held that the referendum clause in the Missouri Con-

---

**2.** Some state constitutions do provide for a referendum on part of a bill. *See, e.g.*, OHIO CONST. art. II, § 1c; WASH. CONST. art. 2, § I.

stitution cannot be construed to allow a referendum as to part of the subjects covered by the same bill. *State ex rel. Boatmen's Nat. Bank of St. Louis v. Webster Groves General Sewer Dist. No. 1.*, 327 Mo. 594, 37 S.W.2d 905, 908 (banc 1931). An emergency clause in a bill cannot be defeated by showing that there is no emergency as to one of the subjects in the bill. *Id.*

In cases determining whether a state statute constitutes an emergency measure, Missouri courts have only found an emergency clause invalid, and the act subject to referendum, if no part of the act constitutes the emergency. *See Thompson*, 19 S.W.2d at 647 ("The act, whether considered as a whole or with reference to a single one of its provisions, cannot be regarded as an emergent police measure.") and *Heinkel*, 226 S.W.2d at 1013 ("But there is not one word, phrase or sentence in the bill that would justify construing it as an appropriation law.")

The same approach was used in a case arising under the City Charter. In *Edmonds v. City of St. Louis*, 348 Mo. 1063, 156 S.W.2d 619 (1941), the court, citing *Thompson*, held that an ordinance which levied a license tax on vending machines but did nothing else to regulate sales was "solely" a revenue measure and not an emergency police measure, even though it contained an emergency clause declaring the measure necessary for the immediate preservation of the public peace, health, and safety. *Id.* 156 S.W.2d at 623.

Ordinances which deal with defined emergencies, such as fixing a tax rate, supporting public schools, or providing for public works, often go beyond the defined emergency to accomplish the whole purpose of the ordinance in dealing with a particular subject. Illustrative is the ordinance in *Asotsky* which dealt with the Kansas City Charter provision which excepted ordinances "fixing a tax rate." The court only considered whether the ordinance in fact fixed a tax rate. 298 S.W. at 747. However, the ordinance also required cigarette vendors to be licensed, pay a license fee, and pay an occupation tax.

■ The City Charter, like the Missouri Constitution, does not provide for a referendum as to part of an ordinance. Article IV, Section 20 of the Charter authorizes the Board of Aldermen to designate as an emergency measure "any ordinance" "providing for public work or improvements of any kind." It does not limit the designation to bills which solely or exclusively provide for public works. Neither the clear language of the Charter nor legal precedent authorizes reading such a limitation into this provision. Rather, the bill may not contain more than one subject. Art. IV, Sec. 13. Therefore, if an ordinance provides for public works in connection with the subject of the ordinance, the ordinance may properly be declared an emergency measure, even if it also provides for other items within the same subject. The Charter gives the Board of Aldermen the authority to determine, by declaration, whether an ordinance which provides for public works shall be an emergency ordinance. Art. IV, Sec. 20.

■ In this case the ordinance provided for a lease and for public work and improvements. The public work and improvements were consideration for the lease and were set out in the lease as well as in the ordinance. Because the ordinance provided for public work and improvements, the Board of Aldermen could validly declare it to be an emergency measure under Article IV, Section 20. The Board of Aldermen did so. Accordingly, Board Bill No. 335 is a valid emergency measure under the Charter. Having so concluded we do not reach defendants' and intervenor's remaining points.

*Conclusion*

That portion of the trial court's judgment declaring Section Five of Board Bill No. 335 invalid and the other declaratory and injunctive relief awarded based on that declaration is reversed. We may enter the judgment which the trial court should have granted. Rule 84.14. We therefore declare Board Bill No. 335 to be a valid emergency measure under Article IV, Section 20 of the Charter of the City of St. Louis.

GERALD M. SMITH and CRAHAN, JJ., concur.