GRAHAM, STATE TREASURER, v. JAMES C. HORTON.

1. SINKING FUND—*Diversion of—Constitutional Law.* A joint resolution authorizing the State Treasurer to invest the sinking fund in warrants issued for the payment of members of the Legislature and the salaries of Judges, is in conflict with the provisions of article eleven of the constitution, and void.

2. INJUNCTION—*Interest of Plaintiff.* One who is the owner of a State bond whose present value and ultimate security are diminished by such use of the fund, has such an interest as authorizes him to sustain an action for an injunction restraining the Treasurer from making such illegal investment of the fund.

*Error from Shawnee District Court.*

INJUNCTION, brought by the defendant in error to restrain *George Graham,* as State Treasurer, from making an "illegal use" of certain public funds in his possession as such Treasurer. On the 20th day of February, 1863, the legislature passed an act, entitled "An act to fund the territorial debt." (Ch. 12, laws of 1863, p. 32.) The first section provides that the bonds of the State of Kansas shall be prepared and issued to pay certain Territorial indebtedness named in said act. These bonds were to be dated July 1st, 1863, and were to bear interest at six per cent. per annum, payable annually on the first day of July. The 13th section of the act provides that these bonds shall be paid on the first day of July, 1883, at New York city, or the treasurer's office, at the option of holders of the bonds. Section eight directs, that the proper officers of the State, shall cause to be levied and collected in each year thereafter, with the other State taxes, a tax sufficient to pay all interest on said bonds as it should fall due, and also a tax sufficient to create a *sinking fund* for the ultimate payment of the bonds. Section nine pledged the faith of the State for the payment

of these bonds, and all interest thereon. Section ten provides, that the State treasurer shall annually *invest* the acculated sinking fund in bonds issued under said act, by going into the market and buying up the bonds at their market value. Under this act bonds were issued to the amount of $60,500, and one of these bonds of the denomination of $500, was, when this action was commenced, owned by defendant in error.

In 1868 and 1869, a special tax was levied and collected for the specific purpose of creating a *sinking fund* for the redemption of State bonds which had before that time been issued. The several acts providing for this tax, declare that this fund shall be applied *exclusively* for the objects therein designated. Ch. 80, Laws of 1869, p. 170; Gen. Statutes, p. 896, ch. 88.

On the 28th of February, 1870, some forty-seven thousand dollars or more, of this fund, was in the State treasury; and on that day the legislature (Laws of 1870, p. 233,) passed the following joint resolution:

"SEC. 1. That the State Treasurer be and is hereby required to invest the sinking fund now in the treasury, in the warrants of the State, issued in pursuance of an act entitled, 'An act making appropriations for current legislative expenses and for the salaries of the supreme and district judges for the year 1870,' approved February 8, 1870.

"SEC. 2. That whenever a sufficient amount of the general revenue fund shall have accumulated for the redemption of said warrants, then said warrants shall be canceled, and the money derived from the interest and principal of said warrants shall be placed to the credit of said sinking fund: *provided*, that the warrants so purchased shall have endorsed on their face, in red ink, the words "sinking fund," and shall be held by the State Treasurer, together with the interest accruing upon them, separate and apart as a portion of the sinking fund until their redemption, as is herein provided for: *provided*

*further*, that this resolution shall not be construed to act as a repeal of any statute providing for the investment of the sinking fund except as provided above."

This joint resolution was passed over the objections of the Governor, and went into effect on the 3d of March.

*Horton*, being the owner of one of the State bonds, as above stated, filed his petition in the district court, alleging, among other things, that the State Treasurer was about to pay out the sinking fund in compliance with said joint resolution, and asking an injunction. The injunction was granted.

The plaintiff in error, *Graham*, filed a general demurrer to the petition; and at the June Term, 1870, of the district court the demurrer was heard and overruled, and the order of the court restraining Graham from using or investing the *sinking fund* as required by the joint resolution of February 28th, 1870, was made perpetual. The plaintiff in error excepted, and brings the case to this court for review.

*C. M. Foster*, for plaintiff in error:

1. Article 11 of the constitution was intended to provide a system of financial taxation for the State. In some cases its provisions are prohibitory on the legislature, in other cases only directory. It was made for the benefit of the whole people and not for any class. If the legislature fails to carry out the provisions of this article, its members are responsible to the people who elected them. 4 Kas., 268.

The fifth section of this article is prohibitory on the legislature, and was not intended to give rights to the State creditors. It was to keep the legislature from running the State in debt and is prohibitory on the legisla-

ture alone, and cannot be enforced by an individual in a court. 15 Cal., 455; 13 Barb., 217.

The money collected for the various State purposes belongs to the State absolutely. It is not a trustee for the bondholders. The State is liable at all events for the payment of its debts, no matter if the sinking fund or revenue fund is lost without the fault of the State. That the State will meet its obligations when due, is a presumption of law that cannot be disputed. The defendant in error has no rights in the sinking fund; he is a stranger to the provisions of the constitution and cannot dispute the constitutionality of this law. 16 Pick., 96.

2. Said joint resolution is not unconstitutional. As bonds of the State are issued to run long periods of time, it was not designed by the framers of the constitution, that the money collected for their payment should be taken from the pockets of the tax-payers and transferred to the State treasury there to lie idle for thirty, fifty or a hundred years. As the constitution is silent on the subject of the investment of the fund, it is the duty of the legislature to invest the money in productive securities. A sinking fund is generally understood to mean a sum of money set apart from time to time and kept at interest to extinguish a debt at its maturity. In what securities the treasurer shall invest this fund the legislature has the sole and exclusive power to decide. The constitution of the State is not a grant of power, but a restriction on the exercise of the power on the legislature. If the legislature can direct that the State funds can be invested in one kind of securities, it can direct them to be invested in any kind of securities, and its choice is not subject to judicial supervision.

But it is said that this act is unconstitutional, because

it violates the contract of the State with the bondholders. The constitution of this State does not prohibit the passage of laws impairing the obligation of contracts; nor does the act in question come within the prohibition contained in § 10 of art. 1 of the constitution of the United States. That section was never intended to act on the sovereign power of a State, unless such power was used for the purpose of destroying vested rights. It was never supposed that the constitution of the United States could prevent a State from repudiating its debts.

But the act creating this debt does not make a contract with the bondholders that the money raised for the purpose of paying the bonds shall be invested in one particular way and in no other. It has none of the terms of a contract. That part of the act is incomplete. It only provides that the treasurer shall purchase bonds issued under that act, when they can be obtained at par. It is simply directory on the State treasurer, and defines his duties. No vested right can grow out of such an act. The legislature did not prohibit a future legislature from legislating on the same subject. It is doubtful whether it could do so. 16 How., 431; 10 N. H., 146.

3. Said joint resolution does not authorize the State treasurer to use the sinking fund for the purpose of *paying* the current expenses of the State. It only authorizes him to *invest* it in State warrants. The fund still remains, no matter in what shape it is. It makes no difference with the defendant in error what the money is used for. 6 Cranch, 131.

4. The legislature has never yet levied any tax for the purpose of paying the bond of the defendant in error. There is no sinking fund provided for any one class of bonds. A sinking fund is levied for the payment of the

State debt generally.   Gen. Stat., 896 ; ch.  80, Laws' of
1869.

As there are now more than twenty different kinds of
bonds, it would be impracticable to levy so many differ-
ent taxes and keep so many different funds on the books
of the auditor and treasurer.   The legislature has wisely
levied a tax in the aggregate sufficient, in their judgment,
to pay off all the State bonds as they become due.   The
defendant in error cannot complain of this.   If he has
any right of action he must set out how much interest
he has in this fund.   As he only sues for himself, and
not for the other bondholders, he is only entitled, if he
has any remedy, to have such a part of the sinking fund
set apart, as the ownership of his single bond gives him
an interest in.   Between the defendant in error and the
holders of the greater part of the State debt, there is no
common interest.

A perpetual injunction on the treasurer from using the
whole fund, when according to Horton's own showing
he has a slight interest only in it, is not the remedy to
which the latter is entitled, if entitled to any.

5. The defendant in error cannot maintain his action
at all.   The injury, if one is threatened to be done, is
not confined to him alone.   It affects so many persons,
and those too who have no privity of interest with him-
self, that it becomes a public injury, and must be prose-
cuted by the attorney general in the name of the State.
When a whole class of individuals are equally affected
by a wrongful act, no one can bring an action for him-
self.   13 Barb., 218; 8 Cowen, 196; 19 Johns., 223.

6. The injury complained of is too vague.   That cap-
italists are afraid that the State will not keep its faith
with its creditors, and that its bonds will not be paid

when due, are injuries that the law will not presume nor allow to be proved. What does the defendant in error assert in his petition as the ground of his injury? It is a supposed wrongful act, *to be committed thirteen years hence,* by the sovereign power. Leave that out of his petition, and he has no ground of complaint. No matter what may be done with money raised as a sinking fund, if his bond is paid when due, he has no reason to complain: It is *damnum absque injuria,* if anything.

7. This action cannot be maintained for want of proper parties. The State is the owner of the fund, and the State treasurer only its custodian. The issue attempted to be raised in this case is the right of the State to invest the sinking fund in its own way. The treasurer has no interest in the matter whatever. It makes no difference to him in what way the money is used. The State is the only party in interest. Neither the defendant nor the plaintiff own one dollar of the money. How can two parties go into court and settle the right of a third to use his own money?

8. The court has no jurisdiction of the subject-matter of this suit. It cannot, therefore, reach it by enjoining the treasurer not to use it in a certain way. It can make no order concerning the fund, nor decide who are the owners of it. The court can make no order to have the fund separated. It cannot require the treasurer to keep his books so as to preserve a fund for defendant's bond.

9. The joint resolution was passed by the legislature when its constitutionality was strongly assailed. The governor vetoed the bill on the ground of its unconstitutionality. It was again discussed by both houses, and passed by a two-thirds vote. Such a deliberate construc-

tion of the constitution, by the legislature, is to be taken into consideration by the court. The legislature of 1869 put a like construction on the act under 'like circumstances. Ch. 111, Laws of 1869; 12 Wheat, 270; 16 Pick., 95; 39 N. H., 312; 6 Cranch, 128.

*Martin, Burns & Case,* for defendant in error:

1. The authority for the State to issue bonds, and contract for public debts, is found in § 5, art. 11 of the constitution; and the same section requires the State to provide for the payment of the debt evidenced by such bonds.

2. The State has exercised the right to issue bonds. Laws of 1863, p. 32, ch. 12; and has performed the duty of providing for their payment. Gen. Stat., p. 896, ch. 88; Laws of 1869, p. 170, ch. 80.

3. The resolution of February 28th, 1870, directing the investing of this sinking fund, is simply a borrowing of this fund, " to defray the current expenses of the State; " and is therefore in violation of § 3. art. 11 of the constitution, which directs that, " the legislature shall provide each year for raising revenue sufficient to defray the current expenses of the State."

4. The diversion or appropriation of the sinking fund, contemplated by this resolution, is a palpable violation of the 4th section of article 11 of the constitution, which provides that " no tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to *which object only* such tax shall be applied."

5. This resolution is a plain violation of section 5 of article 11 of the constitution, in at least three important particulars, to-wit: *First*—It creates a " public debt," and this can be done by the legislature directly for two

purposes only, to-wit: " to meet extraordinary expenses," or for " public improvements," and to the extent of one million dollars only. (4 Kas., 265; 7 N. Y., 88, 107.) *Second*—The resolution undertakes to appropriate to a wholly different purpose a sinking fund specifically appropriated for the payment of the bonds by the very act under which the bonds were issued. *Third*—The legislature in passing the said resolution in effect, undertook to repeal §§ 8 and 10 of said act of 1863, creating this bonded debt. Section 5 of article 11 of the constitution provides, that " such appropriation *shall not be repealed*, nor the taxes postponed or diminished until the interest and principal of such debt shall have been wholly paid."

6. The law under which the bond in controversy was issued, and the several constitutional provisions in relation to the same, constitute a part of the contract between the State and the owner of the bond; the legislature has no constitutional authority to pass any law or resolution that will impair its obligations; and the bond-owner has a right to insist upon a faithful compliance with every provision of the constitution and of the law under which the bond was issued that operates as a protection to his rights. Cooley's Const. Law, pp. 273, 281, 285, 358; Sedg. on Stat. and Const. Law, pp. 616 to 628; 31 Penn. St., 175, 185; 16 How., 369; 4 Kas., 382; 4 Wallace, 535.

The opinion of the court was delivered by

KINGMAN, C. J.: On the 20th of February, 1863, an act was passed " to fund the territorial debt." The debt was to be funded by issuing bonds therefor of a certain tenor. The eighth section of this act directs that the proper officers of the State shall cause to be levied and

collected in each year thereafter, with the other State taxes, a tax sufficient to pay all interest on said bonds as it should fall due, and also a tax to create a sinking fund for the ultimate payment of the bonds. The ninth section pledges the faith of the State for the payment of these bonds and all interest thereon. The tenth section provides that the state treasurer shall annually invest the sinking fund in the bonds so issued, at their market value. In pursuance of this law, the bonds were issued, and one of them, of the denomination of $500, belongs to the defendant in error. In the years 1868 and 1869 a special tax of one-half mill upon the dollar was levied and collected in each year for the specific purpose of creating a sinking fund, for the redemption of the bonds of the State, which had, before that time, been issued by the authority of the State. The acts providing for this tax declare that this fund shall be applied exclusively for the objects therein designated.

On the 28th of February, 1870, the Legislature passed a joint resolution, (ch. 113, Laws 1870, p. 233,) directing the State Treasurer to invest the said sinking fund in the warrants of the State issued in pursuance of an act (ch. 1, Laws of 1870, p. 17,) " making appropriations for current legislative expenses, and for salaries of the supreme and district judges." This joint resolution was passed over the objections of the governor.

The record fairly raises but two questions for examination and consideration in deciding the case: *First,* Is the joint resolution in conflict with the provisions of the constitution? *Second,* Has the defendant in error such an interest in the fund appropriated by the joint resolution, as authorizes the courts to grant him the relief sought in this case, even if the resolution itself is in conflict with the constitution?

I. It is never a pleasant duty to examine questions involving the constitutionality of acts of the Legislature. The result of such investigations may be such as necessarily compels a court to declare the acts of a co-ordinate branch of the government of no effect, and the reported cases show with what reluctance courts are compelled to conclusions involving such grave and delicate consequences; and it is only upon the clearest convictions that they are willing to do so. The present case is attended with the further embarrassment of passing upon questions involving, in the opinion of the legislature, the value of the compensation of its members and of the judges throughout the State. Nor was the action of the legislature taken through inadvertence or want of consideration, as is sometimes the case, for the resolution was passed over the veto of the governor, whose objections were urged in an elaborate and powerful message, on the return of the resolution without his approval; so, if we reach a conclusion adverse to the constitutionality of the resolution, we must do so not only to the injury of the pecuniary interest of the members, but against the deliberate if not the unbiased judgment of the legislative branch of the government. Still, in a proper case, courts can no more avoid this than any other duty.

It is claimed that the resolution is in violation of sections three, four, and five, of article eleven, of the constitution; that it violates section three by borrowing money for the current expenses of the government, instead of raising revenue therefor, as that section requires; that it violates section four, in this, that it takes the money raised for one object and appropriates it to a different one; that it violates section five in at least three impor-

tant particulars: 1: It creates a "public debt," and this can be done by the legislature for two purposes only, and the object of the resolution is only to use the sinking fund to defray the current expenses of the State.   2: It seeks to seize and sequester a fund specifically raised and appropriated by law for the payment of the public debt, and apply it to a different object.   3: The resolution to a certain extent repeals sections eight and ten of the act of 1863 creating this bonded debt.   These sections provide for a tax to create a sinking fund and prescribe the manner of its investment.   Section five of article eleven of the constitution prohibits the repeal of such laws until the debt is extinguished.

It is not proposed to comment upon or decide these several propositions in detail, though it would perhaps require great ingenuity to show that each of them was not well founded; but the decision of the case does not require us to go into an investigation so extensive.   A few observations will indicate the grounds of our decision.

It is apparent from the resolution and the law to which it refers, that the object of the resolution is to use for a short time so much of the sinking fund as may be necessary to pay the members of the legislature and the judges of the State.   Provision is made for the payment of interest, and the early return of the money to the sinking fund, so that no great injury could result to the fund from its use, as contemplated by the legislature, and no doubt this consideration had great weight with the legislature. But in construing a constitution it would be dangerous to give much weight to such reasoning.   Rules fundamental in their character, and intended to serve wise ends, are made chiefly to restrain those on whom they are imposed from looking to immediate benefits, regard-

less of far-reaching consequences. The sinking fund is solemnly set apart for a specific purpose. The wisdom of this provision is not questioned. It is only asserted that no great mischief can flow from its temporary use, when such ample provision is made for its speedy replacement. But if, as a question of power, which alone we have to do with, one dollar of this fund can be used for the ordinary expenses of the State, then every cent of it may. If it can be thus used for one day, it may be for all time. If one legislature may thus use it, then may all, and the result might be that every obligation of the State would mature, without there being one dollar in the treasury to pay with. No man can read article eleven of our constitution and not know that such a result cannot be reached but in plain violation thereof. All fine-spun theories and ingenious reasoning are swept away, when we confront what may be the possible consequences of admitting the existence of the power of the legislature to use the fund for the ordinary purposes of the State, with these plain provisions of the constitution. If this resolution is constitutional, there is no use to which the sinking fund might be applied, that would not be so. We are therefore constrained to hold that the resolution is in conflict with the provisions of the constitution.

II. The other question in this case, is whether Horton, the defendant in error, sustains such a relation to the subject-matter of this action as will enable him to maintain this action and entitle him to the relief prayed for. It will be remembered that the case was tried on a demurrer to the petition, and of course all the necessary and proper averments of the petition are taken as true. It is alleged in the petition that the misappropriation of the fund will endanger the

2. INJUNCTION—
interest neces-
sary to main-
tain.

payment of plaintiff's bond at maturity, and the credit of the State in the judgment of capitalists, holders, and dealers in public securities, will be impaired, and therefore the present value of the bond be diminished. This being all taken as true, it is apparent that the defendant in error has a direct pecuniary interest in the preservation and lawful administration of the sinking fund—an interest which he holds not merely as a citizen, and in common with every other member of the community; he does not represent the whole public, who are alike aggrieved, but his own separate and personal interest, which is specially damaged by the proposed action of the treasurer; and in this respect the case differs from that of *Craft v. The County Commissioners of Jackson county*, decided at this term of the court, (5 Kas., 518.) He does not sue the State. . He only asks that certain illegal and unauthorized acts of its agents, tending to the special injury of his individual property, shall be restrained. And this, we think, he has a clear right to do. The judgment must, therefore, be affirmed.

All the Justices concurring.