## STATE v. STRUBLE.

1. Laws 1903, p. 81, c. 79, providing for the appointment of a public examiner, and requiring that banks located within the state shall make reports to him as demanded, the form of which may be prescribed by the public examiner, and shall require, under appropriate heads, the exhibition of the details and items of the bank's resources and liabilities, etc., was not invalid as an attempted delegation of legislative power to state bank examiners.

2. The legislature, in the exercise of its police power, is authorized to regulate the business of banking, and for that purpose may authorize an administrative officer to adopt a reasonable system of inspection and reports.

3. Laws 1903, p. 81, c. 79, sec. 2, relating to bank inspection, provides

that where reference is made to banks, bankers, or banking in the act, the same shall be construed as applying to any corporation, association, firm, or individual engaged in such business; and section 26 (page 88) declares that every officer, agent, or clerk of any banking institution within the title, who subscribes or makes any false statement, or enters or subscribes or exhibits any false paper, etc., shall be subject to imprisonment, etc. Held, that the term "institution" as so used, included a private banker and hence the section was not unconstitutional, as conferring a special privilege on private bankers.

4. Where a report of the condition of a bank, submitted to the public examiner and alleged to be false, was received by him without objection on the ground that it was not attested by the signature of at least two of the bank's directors, as required by Laws 1903, p. 81, c. 79, sec. 2,.it was nevertheless sufficient to sustain an information against the officer, verifying the same for making a false report.

(Opinion filed Aug. 2, 1905)

Error to circuit court, Moody county; Hon. FRANK B. SMITH, Judge.

An information was filed against G. L. Struble for making a false financial report of the assets of a state bank. From an order sustaining a demurrer to the information, the state brings error. Reversed.

*Philo Hall,* Atty. Gen., *E. G. Coleman,* State's Atty., and *Aubrey Lawrence,* for the State.

*Aikens & Judge,* for defendant in error. .

FULLER, J.  In order to determine whether facts sufficient to constitute a public offense are stated in the information filed against the defendant in error on the 28th day of March, 1905, charging him with the crime of making a false financial report, it will be necessary to examine certain provisions of chapter 79, p 81, Laws

1903, which is entitled "An act to provide a uniform system for the organization and control of banks and define the duties and powers of the public examiner." Section 1 is as follows: "For the purposes of this act every corporation, association, firm or individual whose business, in whole or in part, in South Dakota, consist of the taking of deposits or buying and selling exchange shall be held to be and is hereby declared to be a bank or banker, and the business of such corporation, association, firm or individual that of banking, and as thus defined such individual member of such corporation, association, or firm (except as to national banks) shall be subject to all the provisions of this act. Where reference herein is made to banks, bankers or banking in any manner the same shall be construed as applying to any such corporation, association, firm or individual so engaged in business as here defined." Section 2: "The public examiner of South Dakota shall be ex-officio superintendent of banks; he shall cause every corporation, association, firm or individual transacting a banking business in this state to report to him not less than four times a year according to the form which may be prescribed by him, verified by the oath or affirmation of the president, vice president, cashier, or assistant cashier, or managing officer of such banking institution, and attested by the signature of at least two of its directors, if the same is a private bank, to be sworn to by the owner. Every such report shall exhibit in detail and under appropriate heads, the resources and liabilities of said institution at the close of business on any past day by him specified and shall be transmitted to the public examiner within seven days after the receipt of a request therefor from him. ⁕ * * The public examiner shall also have power to call for special reports from any particular banking institution whenever in his judgment the same are necessary to enable him to have a full and complete

knowledge of its condition." Section 26: "Every officer, agent or clerk of any banking institution under this title who subscribes or makes any false statements or entries in the books of such institution or subscribes or exhibits any false paper with the intent to deceive any person authorized to examine as to the condition of such banking institution, or subscribes or makes false reports, shall be subject to imprisonment at hard labor in the state penitentiary, for such term, not less than one (1) year or more han ten (10) years, as the court trying him may designate." ·

This statute provides in effect that the report, the form of which may be prescribed by the public examiner, shall, under appropriate heads, exhibit the details and items constituting the bank's resources and liabilities; and in support of the order sustaining a demurrer to the information counsel for the accused contend that the Legislature has attempted to delegate its power by authorizing that officer to dictate the form and substance of the required report. The nature and diversity of the banking business render it practically impossible for the Legislature to prescribe every detail concerning the rules and regulations governing these administrative officers of the law, who are ex-officio superintendents of banks, and the statute under consideration confers upon the public examiner no powers which trench upon the legislative domain. It is beyond dispute that the Legislature, in the exercise of its police power to regulate and control the business of banking, may authorize any such administrative officer to adopt a reasonable system of inspection and reports that is best calculated to protect the public and prevent the dissipation of trust funds. In case of United States v. Williams, 6 Mont. 379, 12 Pac. 851, a federal statute providing that the cutting of timber on public lands for building, agriculture, and domestice purposes ʻ shall be subject to such rules and regulations as the Secretary of the In-

terior may prescribe," it was held not to be unconstitutional as trenching upon the domain of the legislative department of the government. So in Ingram v. State, 84 Am. Dec. 782, a statute authorizing the Governor to prescribe rules and regulations under which the owner of grain may distill the same into spirituous liquors, and making the violation of such rules a public offense, was declared not to deprive the citizen of his property without due process of law, nor transfer legislative power to the Governor. Legislative enactments granting to the various superintending officers of the state and nation authority to prescribe rules in administrative matters are very common and have been unhesitatingly sustained in the following cases: United States v. Breen, 40 Fed. 402; Isenhour v. State, 157 Ind. 517, 62 N. E. 40; Leeper v. State, 53 S. W. 962. At page 70 of his excellent treatise on Statutory Construction, Mr. Sutherland says: "The true distinction is between the delegation of power to make the law which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." Resources and liabilities are the material substance concerning which the public examiner is authorized to inquire, and it would defeat the purpose of the statute to anticipate the method of detecting mismanagement or limit the investigation by prescribing the form of a report to be universally employed. Upon both principle and authority the conclusion is irresistible that our statute contains nothing to justify the imputation of delegated power, and the position of counsel is clearly untenable.

It is further argued insistently by counsel for the accused that the statute is rendered unequal, inoperative; and void by the omission of private banks from the terms of section 26, supra, and.

thereby granting to the private banker immunity from the punishment inflicted upon "every officer, agent, or clerk of any banking instiution" violating the provisions of this act in the manner therein specified. Speaking of class legislation, Judge Cooley says: "The state, it is to be presumed, has no favors to bestow, and designs to inflict no arbitrary deprivation of rights. Special privileges are always obnoxious, and discriminations against persons or classes are still more so; and, as a rule of construction, it is to be presumed they were probably not contemplated or designed." Cooley, Const. Lim. 563. In its primary sense Webster has defined the noun "institution" to be "an establishment, as the institution of a school," and, as a school or institution of any kind may be either public or private, the expression "any banking institution," as employed in section 26, supra, clearly embraces a private bank or banker within its legal significance. As to the correctness of this construction, every doubt is dislodged by the last sentence contained in section 1, which reads as follows: "Where reference herein is made to banks, bankers or banking in any manner, the same shall be construed as applying to any corporation, association, firm or individual so engaged in business as here defined." Manifestly there is no reasonable ground for the claim that the Legislature has discriminated in favor of a person owning or connected with the management of a private bank, by creating no penalty for his making a false report, and unquestionably the statute is equally applicable to every person authorized to make a statement or report to the public examiner relative to the financial condition of any banking institution, whether public or private.

Though confessedly false and designed to deceive the public examiner, the instrument set out in the information, and subscribed and sworn to by the accused as the cashier of the bank, is not

"attested by the signature of at least two of its directors," as required by section 2 of the act; and counsel maintain that such omission renders the same void upon its face, and therefore incapable of deceiving any person authorized to examine the same. It is charged in the information that the public examiner made demand upon the accused for "a sworn statement of the financial condition of the Egan State Bank, of Egan, South Dakota," and in response thereto he made and rendered what is frequently denominated in the information "a statement or report," and by his oath verified the same to be "a true and correct statement of the financial condition of said bank at the close of business September 9, 1903; * * * that the statement as made gives the true and correct financial standing of the bank, and that all questions are truthfully answered." The attesting witnesses are guilty of no offense, even though the report or statement contains false entries, and in construing a provision requiring that the report shall be "attested by the signature of three directors," such omission was considered to be no defense in the case of Cochran v. United States, 157 U. S. 286, and in dismissing the proposition Mr. Justice Brown, speaking for that court, says: "For the reason above given we do not think it necessary to allege that the report in which the false entry was made was actually verified by the oath or affirmation of the president or cashier, or attested by the signature of the directors, or, at least, that the fact that it is averred to have been made in accordance with the provisions of section 5211, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3498], is a sufficient averment that it was properly verified and attested. If such report were not properly verified and attested, it would doubtless be competent for the Comptroller of the Currency to reject it, or to proceed against the association, under section 5213, Rev. St. U. S. [U. S. Comp. St.

p. 3499], for failure to make and transmit a proper report. But, if an assastant cashier makes a false entry in a report, which is designed to be and is made use of as a report to the Comptroller of the Currency, under section 5211, it is difficult to see why it is not equally an offense, if the Comptroller of the Currency chooses *to accept such report without the proper attestation and verification."

As the information is sustained by reason and authority at every point of attack, it is unnecessary to pursue this discussion further, and the order appealed from is reversed.