STATE ex rel. OSTER, Plaintiff v. JORGENSON, Defendant

(136 N.W.2d 870)

(File No. 10273. Opinion filed September 15, 1965)

**LeRoy S. Lassegard,** Mitchell, for plaintiff.

**Frank L. Farrar,** Atty. Gen., **C. J. Kelly,** Asst. Atty. Gen., Pierre, for defendant.

HANSON, J. This is an original proceeding wherein petitioner seeks a writ of prohibition to restrain the state treasurer from paying or disbursing money from 68 different appropriated funds contained in The General Appropriations Act of 1965 (Chapter 277 of the Session Laws of 1965). No useful purpose would be served in listing all of the challenged appropriated items. It is sufficient to say they relate to and involve a wide variety of governmental functions and activities such as old age assistance; aid to dependent children; mental health centers; education of handicapped children; livestock disease control; research projects; state aid to equalize taxes in counties having school and endowment lands; vocational training; construction, repair and

maintenance of buildings at various state institutions; certain salaries at institutions of higher learning; and a memorial museum to the Battleship South Dakota.

■ Some similar appropriations have been included in past general appropriation bills. Many others have not. The legislative reasons for these changes are not before us and are not material to their validity. It is of no great significance that a particular appropriation has never been included in a general appropriation bill in the past as precedent alone does not prove or disprove the existence of legislative power to do so. If constitutional power does not exist, it cannot be acquired by legislative assertion. If the power does exist it cannot be lost by failure to exercise it. Wilmore v. Annear, 100 Colo. 106, 65 P.2d 1433.

With that as a prelude we proceed to a consideration of petitioner's specific objections commencing with the sufficiency of the title to Chapter 277, Session Laws of 1965. It reads "AN ACT Entitled, An Act appropriating money for salary and expenses of the executive, legislative and judicial departments of the State, for personal services and expenses of all officers, boards, and departments, for support and maintenance of the education, charitable and penal institutions, the Soldiers' Home, maintenance of the State House, and maintenance of the State Guard." Petitioner contends the title does not comply with or satisfy the requirements of Art. III, Section 21 of the Constitution of South Dakota which prescribes that "No law shall embrace more than one subject, which shall be expressed in its title."

■ A general appropriation bill is not legislation in the true sense of the term. It is as its language implies "a setting apart of the funds necessary for the use and maintenance of the various departments of the state government already in existence and functioning. * * * In providing that it should embrace nothing else, the framers of the Constitution undoubtedly intended that members of the legislature should be free to vote on it knowing that appropriations and nothing else were involved." Sellers v. Frohmiller, 42 Ariz. 239, 24 P.2d 666. Its singular subject is the appropriation of money. It serves no

other purpose and its contents are constitutionally defined and limited. Of necessity, it appropriates money for a variety of purposes all of which ·need not be stated with particularity in the title. To do so would cast an onerous and unnecessary burden on the legislature. For these reasons the constitutions of some states expressly exempt their general appropriation bills from the single subject title requirement. Perhaps our constitutional provisions do so by necessary implication, but we need not so decide here as the title to Chapter 277 fully and completely complies with the requirements of Section 21, Art. III. The controlling rule is expressed in the landmark case of State v. Morgan, 2 S.D. 32, 48 N.W. 314, as follows:

"The constitutional requirement in our constitution is addressed to the subject. This subject must be single. The provisions of the act must all relate directly to the same subject, have a natural connection, and not be foreign to the subject as stated in the title. The title must state the subject of the act for the information, not only of the legislature, but of the public generally. When the title of a legislative act expresses a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will or may facilitate the accomplishment of the purpose so stated, are germane to its title. There is no constitutional restriction as to the scope or magnitude of the single subject of a legislative act."

The title to Chapter 277 uses the word "expenses" to describe the nature of appropriations to be made for the executive, legislative and judicial departments of the state. Certainly that unqualified word is broader in scope than the restrictive terms "ordinary expenses" or "current expenses". Likewise the word "all" preceding "officers, boards, and departments" is all inclusive and serves to alert the average reader that Chapter 277 is a general appropriation bill. We are satisfied that no member of the public and no member of the legislature was, or could be, misled as to the subject or purpose of Chapter 277 by its title. To invalidate the entire General Appropriations Bill under

the circumstances and for the reasons urged would be unreasonable and unrealistic.

The gist of petitioner's remaining objections pertains to and involves the application of Section 2, Art. XII of our Constitution to the several disputed appropriated items. It provides:

"The general appropriation bill shall embrace nothing but appropriations for ordinary expenses of the executive, legislative and judicial departments of the state, the current expenses of state institutions, interest on the public debt, and for common schools. All other appropriations shall be made by separate bills, each embracing but one object, and shall require a two-thirds vote of all the members of each branch of the legislature."

This constitutional provision allows a legislative majority to appropriate funds for the ordinary expenses of state government and denies to a minority the power to prevent, obstruct, or stop the operation of the vital affairs of government by denying those necessary funds. But the door to the state treasury is not so easily opened as to "all other appropriations". They must be the single subject of separate bills and receive the affirmative approval of two-thirds of all members of both houses of the legislature. Matters which could be included in the general appropriation bill may be the subjects of special appropriation bills without nullifying consequences. However, appropriations included within the general appropriation bill outside of and beyond its scope are void. Callaghan v. Boyce, 17 Ariz. 433, 153 P. 773.

 Sec. 18, Art. III of the Constitution provides that upon final passage of a bill in each house of the legislature the "yeas and nays shall be entered upon the journal." According to the journals which this court may judicially notice, Barnsdall Refining Corp. v. Welsh, 64 S.D. 647, 269 N.W. 853, Chapter 277 of the Session Laws of 1965 did not receive an affirmative vote of two-thirds of all members of each branch of the legislature.

What then did the framers of our Constitution mean or intend in Sec. 2, Art. XII, by the term "ordinary expenses of the executive, legislative and judicial departments of the state"? By the term "current expenses of state institutions"? By "all other appropriations"? And what are our "state institutions" and what do the executive, legislative and judicial departments of the state consist of today? Essentially those questions are the issues involved.

An insight into the meaning of the term "ordinary expenses of the executive, legislative and judicial departments of the state" is indicated in the early advisory opinion of In re Limitation of Taxation, 3 S.D. 456, 54 N.W. 417, wherein the court was concerned with the application of Sec. 1, Art. XI of the Constitution which then and now provides that "The legislature shall provide for an annual tax, sufficient to defray the estimated ordinary expenses of the state for each year, not to exceed in any one year two mills on each dollar of the assessed valuation of all taxable property in the state * * *. And whenever it shall appear that such ordinary expenses shall exceed the income of the state for such year, the legislature shall provide for levying a tax for the ensuing year, sufficient, with other sources of income, to pay the deficiency of the preceding year, together with the estimated expenses of such ensuing year. * * *" The court said the "ordinary expenses" of the state are practically defined in Sec. 2, Art. XII and

"To meet these ordinary expenses, appropriation may be made by one general appropriation law, passed by the usual majority vote; but to meet extraordinary expenses each object of appropriation must be the subject of an independent and separate bill, passed by a two-thirds vote. We regard this plainly marked distinction between ordinary and extraordinary expenses, and the extreme carefulness with which the constitution has undertaken to guard the taxpayers and the public treasury against hasty and ill-advised outlays for extraordinary expenses, as peculiarly significant in construing the constitutional provisions involved in your inquiry. As to the ordinary current expenses of the state,

which can be each year estimated with close approximation to correctness, excessive taxation is provided against by a fixed maximum rate; but probably no constitution could safely provide an arbitrary limit to taxation for extraordinary and emergency cases, for no constitutional convention could possibly anticipate what such case might be. It might be to protect the people of the state, by extreme and unusual means, against an approaching pestilence, or to make temporary provision for the patients of the insane hospital, unhoused and scattered by a devastating fire, or for any other exceptional and extraordinary object essential to the welfare of the state. Such expenses would be, confessedly, extraordinary and unusual, but because of the impossibility of anticipating such extraordinary contingencies, and the consequent impracticability of fixing in advance an arbitrary and inexorable rule for the limitation and control of taxation necessary to meet them, the constitution attempts to furnish an adequate restriction and protection in the requirement that no bill appropriating money for an extraordinary purpose can become a law without the support of two thirds of all the members of each house. Whether or not to provide an annual tax sufficient to defray the estimated extraordinary expenses of the state is not left to the discretion of the legislature, but is plainly written in the constitution as an imperative duty; but whether to provide for some extraordinary and exceptional expense is, we think, left to the wisdom and judgment of the legislature, subject always to the condition that no money shall be appropriated from the state treasury for such purpose except upon the approval and favorable vote of two thirds of the members of each house. This was doubtless regarded by the framers of the constitution as an adequate guaranty against an unwise or imprudent use of the public funds,—a rule sufficiently flexible to meet emergencies, yet safe and trustworthy, because resting in the conscience and enlightened judgment of so

large a proportion of the people's immediate representatives."

This opinion points up the constitutional relationship and limitations on both taxation and the expenditure of public funds.

Black's Law Dictionary, 4th Ed., defines the word "ordinary" in its adjectival sense as "Regular; usual; normal; common; often recurring; according to established order; settled; customary; reasonable; not characterized by peculiar or unusual circumstances * * *" and the same source defines the term "current expense" as "Ordinary, regular, and continuing expenditures for the maintenance of property, the carrying on of an office, municipal government etc."

The Constitution of Montana provides in Sec. 33, Art. V, that the "general appropriation bills shall embrace nothing but appropriations for the ordinary expenses of the legislative, executive and judicial departments of the state * * *". In construing this provision in Miller Ins. Agency v. Porter, 93 Mont. 567, 20 P.2d 643, the court held fire insurance premiums on the state capitol and other institutions such as the penitentiary to be properly included in the general appropriation bill as an ordinary expense. The court said ordinary expenses include the current expenses of the government and "Any expense which recurs from time to time and is to be reasonably anticipated as likely to occur in order for the proper operation * * * of the state government, is an ordinary expense." Similarly the Ohio court in State ex rel. Jones v. Brown, 112 Ohio St. 590, 148 N.E. 95, said the phrase "current expenses of the state government and state institutions" in addition to those incident to officering and maintaining the state government "includes the preserving in repair and maintaining the property of the state government, and, as applied to roads, includes the maintaining and repairing thereof, as distinguished from new construction".

Although the terms "ordinary expenses" and "current expenses" generally have similar meaning we cannot construe them to be synonymous in the context used in Sec. 2, Art. XII. The object of construing a constitution is to give effect to the intent of the framers of the organic law and of the people

adopting it, Schomer v. Scott, 65 S.D. 353, 274 N.W. 556, and, if possible, effect should be given to every part and every word. 16 Am.Jur.2d, Constitutional Law, § 67. In specifying the classes of appropriations which could be included in the general appropriation bill the framers of our constitution apparently intended some distinction between the "ordinary expenses of the executive, legislative and judicial departments of the state" and the "Current expenses of state institutions" otherwise the word "ordinary" or the word "current" would have sufficed for both classes. Accordingly, the term "ordinary expenses" must have a larger and broader connotation than the term "current expenses". Therefore, we construe the term "ordinary expenses of the executive, legislative and judicial departments of the state" to mean any related expense which recurs with regularity and certainty. The term "current expenses of state institutions" on the other hand is equivalent to "running expenses" which includes any usual, regular, and continuing expenditure for the maintenance of property and for conducting the regular and authorized functions of the institution. Cost of land acquisitions, erection of permanent buildings and similar capital expenditures cannot be considered current expenses. Extraordinary, emergent, and exceptional expenses for any purpose likewise fall within the category of "All other appropriations".

As the functions of state government cover a wide range of activities involving the public peace, health, safety, and welfare its ordinary expenses cannot fairly be compared or confined to the ordinary expenses of a private business enterprise. They are of a different nature and must change from time to time to meet differing needs and conditions. In other words the unusual and extraordinary may become usual and ordinary. The expanding cost of various health and welfare programs is an example. Another, is the appropriations which have been regularly made since 1941 to equalize taxation and to relieve distress in counties and school districts having an abundance of nontaxable state owned school and endowment lands within their boundaries. Therefore, no inflexible rule can be written which will forever clarify and solidify the distinction between "ordinary", "current" and "extraordinary" expenses of state gov-

ernment. The line of demarcation is not clear, distinct, or static. Much must be left to the wisdom, integrity, and good judgment of our legislators.

Petitioner would limit the expenses of "state institutions" contemplated in Sec. 2, Art. XII, to those penal, charitable, and educational institutions elsewhere specifically named and authorized in the constitution. This would exclude the State Fair, State House, Capitol Building and grounds, State Soldiers' Home and other state institutions of a like nature which have no specific constitutional birthright. This would mean the expense of repairing the roof on the state penitentiary could be included in the general appropriation bill and enacted by a majority vote whereas the same expense on the State Soldiers' Home would require a separate bill enacted by a two-thirds vote of the legislature. We cannot believe our constitutional fathers intended to discriminate in this manner between our various state institutions.

In the same vein petitioner asserts that legislatively created boards, agencies, and commissions not specifically named or authorized in the constitution constitute in effect a "fourth branch" of government, therefore, their expenses cannot rightfully be included in a general appropriation bill as "ordinary expenses of the executive, legislative and judicial departments of the state." Again, we consider petitioner's assertion untenable. Although Art. II of our Constitution provides that "The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are prescribed by this constitution" legislative authority to delegate functions of a governmental nature to subordinate boards and commissions was visualized and recognized by Sec. 26, Art. III, of our Constitution and has long been sanctioned by our courts. See State ex rel. Ayers v. Kipp, 10 S.D. 495, 74 N.W. 440. One of the most recent and most cogent statements on this recurring and basic question was written by Judge Smith in Boe v. Foss, 76 S.D. 295, 77 N.W.2d 1, as follows:

"Inherent in the division of our state government into three distinct departments by Art. II of our con-

stitution is the principle that the Legislature cannot abdicate its essential power to enact basic policies into law, or delegate such power to any other department or body. Equally as fundamental and settled is the principle that having written broad policy into law the Legislature, in the execution of that policy, can delegate quasi-legislative power or functions to executive or administrative officers or agencies, provided it.adopts understandable standards to guide its delegate in the exercise of such powers. Territory ex rel. Smith v. Scott, 3 Dak. 357, 20 N.W. 401; Davenport v. Elrod, 20 S.D. 567, 107 N.W. 833; Brookings County v. Murphy, 23 S.D. 311, 121 N.W. 793; St. Charles State Bank v. Wingfield, 36 S.D. 493, 155 N.W. 776; Application of Dakota Transportation, Inc. [of Sioux Falls] 67 S.D. 221, 291 N.W. 589; Utah Idaho Sugar Co. v. Temmey, 68 S.D. 623, 5 N.W.2d 486; and see Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 474; 27 Yale L.J. 892; 24 Corn.L.Q. 13."

Against a constitutional background substantially similar to ours the same contention was made in the early Colorado case of Parks v. Commissioners of Soldiers' & Sailors' Home, 22 Colo. 86, 43 P. 542. In rejecting the contention that their constitution perpetually limited the executive offices to those expressly enumerated in the constitution itself the court said:

"* * * it is sufficient to say that every officer of this state who holds his position by election or appointment, and not by contract, and whose duties are defined by statute, and are in their nature continuous, and relate to the administration of the affairs of the state government, and whose salary is paid out of the public funds, is a public officer of either the legislative, executive, or judicial department of the government, and may in the discretion of the legislature properly have his salary included in the general appropriation bill, and have the appropriation therefor take rank accordingly; * * *. Morever, as the officers established by the

constitution and those created by authorized legislative authority are usually required to keep offices, records, papers, etc., it is evident that expenses for these and like items may also be provided for as a part of the ordinary expenses of the legislative, executive, and judicial departments of the government. Our conclusions upon this branch of the argument may be summarized as follows: That as to those offices not expressly enumerated in the constitution the legislature has plenary power to create or abolish the same, subject to well-known constitutional restrictions. It may, subject to such restrictions, increase or diminish the salaries of the incumbents, but while the offices are in existence, and the officers are discharging their duties, appropriations made for their salaries or necessary expenses are entitled to take rank with the ordinary expenses of the state government."

It may be conceded that some administrative agencies are chameleon-like in character and possess attributes of all three departments of state, therefore, they do not lend themselves readily to classification in any one of the three great departments of our government. However, with few well recognized exceptions, such as the Legislative Research Council and Department of Audits and Accounts, the power of appointing such officials is vested in the Governor and all, in a broad sense, engage in the function of executing our laws. For budgetary and appropriative purposes most administrative boards, agencies, and commissions are appropriately considered to be part and parcel of the executive branch of our government.

The task of writing general rules in this case is simple compared to the task of applying them to the 68 disputed appropriated items. In exercising this task we do so mindful of the fundamental rule that every presumption favors the validity and propriety of legislative action which should not be held unconstitutional by any court unless its infringement of organic restrictions is plain and palpable beyond a reasonable doubt. State ex rel. Botkin v. Welsh, 61 S.D. 593, 251 N.W. 189.

■ Applying the foregoing principles we conclude the following appropriated items were improperly included in the General Appropriations Bill of 1965 for the reasons indicated:

I. Outside of or beyond current expenses of state institutions:

Section 4.

 (6) BOARD OF REGENTS

**Capital Improvements**
Land Acquisitions ........................... 253,000 Biennium

 (7) BLACK HILLS STATE COLLEGE

Educational Facilities Fund:
**Capital Improvements**
New Construction
Classroom Building .......................... 900,000 Biennium

 (10) SOUTHERN STATE COLLEGE

**Capital Improvements**
New Construction and Equipment
Vocational Building .......................... 380,000 Biennium

 (12) SOUTH DAKOTA STATE UNIVERSITY

Educational Facilities Fund:
**Capital Improvements**
New Construction
Classroom Building .........................1,710,000 Biennium

 (13) UNIVERSITY OF SOUTH DAKOTA

**Capital Improvements**
New Construction
Adult Education Center ................. 300,000 Biennium

Section 8.

PUBLIC HEALTH AND HOSPITALS

 (4) YANKTON STATE HOSPITAL

**Capital Improvements**
New Construction
Central Dietary Facility .................1,000,000 Biennium

II. Outside of or beyond ordinary expenses of the executive, legislative and judicial departments of the state:

Section 9.

RECREATION AND HISTORICAL

(1) DIVISION OF FORESTRY AND PARKS

**Capital Improvements**
General Fund

| | | |
|---|---|---|
| New Construction and Land Acquisition | 50,000 | 50,000 |
| Highway Funds | | |
| Roadside Parks | 12,500 | 12,500 |
| Game, Fish, & Parks Misc. | 41,000 | 39,500 |

Section 5.

(16) AERONAUTICS COMMISSION

| | | |
|---|---|---|
| Transfer to Special Aviation Fund for Small Airport Construction | 50,000 | 50,000 |
| Transfer to Special Aviation Fund for Scheduled Airline Airport Construction | 100,000 | Biennium |

Section 9.

(4) BATTLESHIP SOUTH DAKOTA

MEMORIAL COMMISSION

**Capital Improvements**
New Construction

| | | |
|---|---|---|
| Museum for the Memorial to the Battleship SOUTH DAKOTA | 100,000 | Biennium |

III. Contrary to Sec. 9, Art. XIII, requiring a two-thirds majority vote of the legislature for any expenditure of money for the construction and maintenance of roads (see State ex rel. Mills v. Wilder, 73 S.D. 330, 42 N.W.2d 891):

Section 6. 1965-66 1966-67

HIGHWAYS

Transfer to State Trunk
 Highway Secondary Fund ............1,000,000 Biennium

 It should be pointed out, in conclusion, that the in-
validity of such appropriations does not render the entire Gen-
eral Appropriations Act of 1965 void or affect the validity of the
remaining appropriations contained therein as the various ap-
propriated funds are severable in nature, State ex rel. Hueller v.
Thompson, 316 Mo. 272, 289 S.W. 338, making the following
severability clause in Section 18 of Chapter 277, Laws of 1965
effective: "If any provision hereof or the application thereof to
any person or circumstance is held invalid such invalidity shall
not affect other provisions or applications of the Act which can
be given effect without the invalid provision or application, and
to this end the provisions of this Act are declared to be severable".

A writ of prohibition will issue as directed.

RENTTO and HOMEYER, JJ., concur.

ROBERTS, P.J., dissents in part.

BIEGELMEIER, J., concurs in part and dissents in part.

ROBERTS, P. J., Presiding Judge (dissenting in part).

Plaintiff challenges the validity of items in the general ap-
propriations act, Ch. 277, Laws 1965, on the grounds that the same
were not enacted pursuant to the following provisions in Article
XII of the Constitution:

"§ 1. No money shall be paid out of the treasury
except upon appropriation by law and on warrant drawn
by the proper officer.

"§ 2. The general appropriation bill shall embrace
nothing but appropriations for ordinary expenses of the
executive, legislative and judicial departments of the
state, the current expenses of state institutions, interest
on the public debt, and for common schools. All other

appropriations shall be made by separate bills, each embracing but one object, and shall require a two-thirds vote of all the members of each branch of the legislature."

Manifestly, no money under these provisions may be paid out of the state treasury or warrants drawn except in pursuance of a valid appropriation made by law. State ex rel. Mills v. Wilder, 73 S.D. 330, 42 N.W.2d 891. It is to be observed that Section 2 makes a distinction between appropriations which may be embraced within the general appropriation bill and enacted by a majority vote and "all other appropriations" which require for enactment a two-thirds vote of all members of each house. Barnsdall Refining Corp. v. Welsh, 64 S.D. 647, 269 N.W. 853. Constitutional amendments (§§ 9, 10, 14 and Art. XIII) authorizing special expenditures contain like provisions for a two-thirds vote of the members elect of each house of the legislature. State ex rel. Mills v. Wilder, supra.

The precise question before this court is the determination of what, if any, of the challenged items included in the general appropriation act for the biennium ending June 30, 1967, are without the constitutionally specified classes. This is a judicial question and while there is a presumption of correctness of the legislative determination as to the nature of the items in the act it is not conclusive.

The language of section 2 is clear in its meaning. The first inquiry in determining the authority of the legislature to include an item in a general appropriation act is whether the item is within these specified classes, namely, (1) expenses of the executive, legislative and judicial departments of the state, (2) expenses of state institutions, (3) payment of interest on the public debt, or (4) an appropriation for common schools. If an item is not within these classifications, it cannot be included within a general appropriation bill. If the item falls within classes (1) or (2) referred to, the inquiry then is whether the money appropriated will be available only for "ordinary" or "current", as contrasted to special or extraordinary, expenses. I concur in the majority opinion as to the meaning of the terms "ordinary" and "current" to effect the constitutional purpose.

The general appropriation act contains an item for "State Aid to Equalize the Tax Base of Counties and School Districts Having School and Endowment Lands". Section 4, Chapter 277, Laws 1965. In the interval between 1941 and 1963 the legislature at each regular session appropriated money by special acts to equalize the tax base of counties and school districts having school and endowment lands within their boundaries. This long legislative construction of the requirements of section 2 was correct. The legislature is subject to the limitations of the constitution and the enactment of Chapter 256, Laws 1965, providing in advance a method for distribution of funds that may be appropriated for the purpose of equalizing taxation in counties and school districts having within their boundaries state owned lands does not change the nature or object of an appropriation for that purpose. The fact that an unconstitutional practice may appear unimportant is no reason for permitting it. Courts must be vigilant in preventing such practice getting a first footing and becoming a precedent for other encroachments. The item in question is not alone "for common schools", but for "counties and school districts" and is not for the support or germane to or directly connected with the functions of the executive or other departments of the state government or its public institutions. The appropriation does not, therefore, come within a class specified in section 2. The majority seemingly have accepted the argument that recurrence of the appropriation for more than twenty years brings it within the term "ordinary expenses". There has been a failure to reckon first with the actual object of the appropriation. It is not within class (1) above referred to and cannot by recurrence become an appropriation for "ordinary" expenses.

For reasons stated the relief sought by plaintiff should in my opinion include the foregoing item. I concur otherwise in the result.

BIEGELMEIER, Judge (concurring in part and dissenting in part).

Art. XII, § 2 of our Constitution approved originally at the Constitutional Election in 1889 then read and now reads as follows:

"The general appropriation bill shall embrace nothing but appropriations for ordinary expenses of the executive, legislative and judicial departments of the state, the current expenses of state institutions, interest on the public debt, and for common schools. All other appropriations shall be made by separate bills, each embracing but one object, and shall require a two-thirds vote of all the members of each branch of the legislature."

This was the provision recommended by the committee at the Constitutional Convention July 18, 1889 and had its origin in § 23 of the Constitution of 1883. Constitutional Debates, Vol. 1, Page 18; Vol. 2, Pages 126 and 143. "This section was designed to safeguard public revenues against hasty and ill-advised legislation and to prevent the evils resulting from combinations." State ex rel. Jensen v. Kelly, 65 S.D. 345, 352, 274 N.W. 319, 323.

"Whether our forefathers foresaw the power of pressure groups may be questioned; that they saw the need to protect themselves against the enthusiasms of a majority of the legislature will not be questioned. Hence the provision of § 2, Art. XII * * * A contemporary view expresses the object of this provision in words as follows, 'This was doubtless regarded by the framers of the constitution as an adequate guaranty against an unwise or imprudent use of the public funds,—a rule sufficiently flexible to meet emergencies, yet safe and trustworthy, because resting in the conscience and enlightened judgment of so large a proportion of the people's immediate representatives.' In re Limitation of Taxation, 3 S.D. 456, 54 N.W. 417, 419." State ex rel. Mills v. Wilder, 73 S.D. 330, 337, 42 N.W.2d 891, 895.

That this section of the Constitution requiring a two-thirds vote was adopted with knowledge of its breadth and meaning is shown by a reading of the Constitutional Debates and especially the attempt made to change the two-thirds requirement to that of a bare majority. This attempt was twice defeated, once by a vote of 51 to 16. Constitutional Debates, Vol. 1, 441. Ref-

erences to these debates are worthy for as was said in State ex rel. Mills v. Wilder, supra,

> "A 'recurrence to fundamental principles', § 27, Art. VI, const., seems appropriate. To bend our organic law to the popular will by astute construction is not our function. Our office is to discover and declare the meaning and intention of those who framed and adopted our constitution."

That background shows the merit of the phrase in State ex rel. Payne v. Reeves, 44 S.D. 567, 587, 184 N.W. 993, 996,

> "Constitutional provisions are presumed to have been more carefully and deliberately framed than is the case with statutes * * *".

It is not a pleasant duty to examine questions involving the constitutionality of acts of the legislature. The result may be such as necessarily compels a court to declare the acts of a co-ordinate branch of the government of no effect, and the reported cases show with what reluctance courts are compelled to conclusions involving such grave and delicate consequences. Yet a court can no more avoid this than any other duty. So much was said by Kingman, C. J., in Graham v. Horton, 6 Kan. 343 (2nd Ed. 209). Our duty, therefore, is a responsibility which, as with other departments, we bear with equal fidelity to the people of our state. It is with that frame of mind that this duty is assumed.

We are not here dealing with the power and authority of the legislature to deal with the subject matter as was involved in State ex rel. Morris v. Handlin, 38 S.D. 550, 162 N.W. 379, where the court said: "The sole and only question for determination is the constitutionality of the said appropriation." That appropriation (Ch. 51, Laws 1917) was passed by a two-thirds vote of the legislature. What we are dealing with is a limitation of the power of the legislature to act or a procedural requirement to passage of a bill.

I am in agreement with the majority opinion insofar as it excludes new construction or new acquisitions of property from

ordinary expenses of the executive, legislative and judicial departments of the state, or current expenses of state institutions. Without commenting on the terms ordinary expenses or current expenses used in constitutions or statutes hereafter construed, the following were held either not current or ordinary or either: Erection of county buildings, a courthouse, city hall, school or county jail, or purchase of a city hall site. State ex rel. Reed v. Marion County Com'rs, 21 Kan. 419 (2nd Ed. p. 308); Thompson v. Mayo, 135 Ark. 143, 204 S.W. 747; State ex rel. City of Republic v. Harvey, 108 Wash. 48, 182 P. 931; City of South Bend v. Reynolds, 155 Ind. 70, 57 N.E. 706, 49 L.R.A. 795; Sheldon v. Purdy, 17 Wash. 135, 49 P. 228; Babcock v. Goodrich, 47 Cal. 488; Niles Bryant School of Piano Tuning v. Bailey, 161 Mich. 193, 126 N.W. 116. I also agree with the other items mentioned in the opinion as improperly included in the General Appropriation Bill for the reasons stated.

One of the challenged items in the General Appropriation Bill is "State Aid to Equalize the Tax Base of Counties and School Districts Having School and Endowment Lands—$900,000". This Bill (H.B. 615), typical of some other items, was introduced as a separate special appropriation, as it had been for prior sessions. Having failed to receive a two-thirds majority in the Senate, its President declared the bill lost. On reconsideration, it was amended striking out the $1,000,000 appropriated therein, and with other minor amendments then passed by the legislature. It is now Ch. 256, Laws of 1965. About that time, the $900,000 item, with other items so deleted from other bills, were added to the S.B. 251, the bill containing general appropriations and now Ch. 277, Laws of 1965. Ch. 256, supra, provides a formula for computing taxes on school and endowment lands and payment to the county treasurers of the amounts therein set out, to be distributed by the treasurer partly to counties and partly to school districts including high schools. The formula and theory are such no separation could have been contemplated. We are not told by the majority opinion the clause of § 2, Art. XII which permits this to be included in the General Appropriation Bill.

It cannot be the "common schools" phrase. One has but to be acquainted with South Dakota history or read its historical and legal publications to come to the conclusion that phrase in 1889 meant and now means the first eight grades. It was used in The Enabling Act, § 10 and § 13 where sections 16 and 36 of every township or their proceeds were granted to the state for support of the "common schools". Any other construction would divert this money from the support of these common schools, contrary to the custom of over 75 years. The phrase is used to distinguish it in § 11 from "public schools and the various state institutions for which the lands have been granted" and which are set out by acres in § 17 of that Act. Early session laws and our codes are replete with definitions and examples of this distinction between common and other schools. Section 7440, 1919 Code and SDC 15.2301 define common school districts; § 7517, 1919 Code permitted one who completed work of the eighth grade and who held a common school diploma to continue his work in a high school; § 7569 permitted consolidation of two or more common school districts. See comment thereon in Hodges v. Snyder, 43 S.D. 166, 173, 178 N.W. 575. The list could be extended but the matter is set at rest in both the majority opinion of Judge Burch and Judge Campbell's history reviewing concurrence in State ex rel. Prchal v. Dailey, 57 S.D. 554, 234 N.W. 45. Aid to counties, while it may be commendable and within the power of the legislature cannot be permitted under the cloak of the common school clause.

Nor is a county a state institution; those are named and provided for in § 2, Art. XII, and even if a broader interpretation is allowed to include other institutions such as a Soldiers' Home being a place or building (see State v. Struble, 19 S.D. 646, 104 N.W. 465) occupied or used by a group properly cared for by the state, it would not include counties. They are expressly mentioned in other sections of the Constitution, Art. IX and others, and their omission in this section is clear they are not within its compass. Our statutes have treated them as separate and distinct. No one has contended that this appropriation comes within the "ordinary expenses of the executive, legislative and judicial departments of the state". A county is not such a department of

the **state** nor is this an ordinary expense. It is extraordinary and cannot be sustained. There was no general law providing for this appropriation when the legislature met, nor any existing law until Ch. 256 became effective July 1, 1965. That there had been special appropriations in varying amounts for some years prior thereto indicates this was an extraordinary expense: the antithesis of an ordinary expense. As authority that an appropriation bill is not general law and has a limited life, see State ex rel. Fowler v. Eggers, 33 Nev. 535, 112 P. 699. This expense then cannot be sustained in the General Appropriation Bill.

The majority opinion suggests that similar appropriations have been made since 1941; yet the record shows it and many others inserted in the 1965 General Appropriation Bill for the first time were always separate special appropriation bills and passed by a two-thirds majority. This was a continuous recognition by the legislature and other state officials of their proper status. Such actions would seem to be the "settled" and "customary" procedure and more in the nature of ordinary as defined by Black's Law Dictionary in that opinion. If ordinary expenses are those which are for "the vital affairs of government" as it states, I agree. The answer is they are neither vital nor ordinary. Most of the items in the General Appropriation Bill are within the constitutional limits of § 2, Art. XII, such as salaries, repair and maintenance of buildings, etc. as they have appeared in such prior bills. They are ordinary and current.

The present problem was not involved in In re Limitation of Taxation, 3 S.D. 456, 54 N.W. 417. The statement that "ordinary current expenses" subject to a two mill levy limit in § 1, Art. XI are those "which can each year be estimated with close approximation to correctness" was an opinion of the Judges in answer to the Governor's inquiry. It is of no help as a definition here. An appropriation must be for a specific purpose (§ 9, Art. XI) and the amount which may be spent is fixed exactly; it cannot be legally exceeded and it is immaterial that the estimates or requests are close or far from the appropriation. It is final.

The same reasoning applies to other items which were theretofore special appropriations only and are creations of the 1965 Legislature. It is persuasive to me that ordinary expenses are those generally accepted as such by law-making bodies and the public. See State ex rel. Gass v. Gordon, 266 Mo. 394, 181 S.W. 1016, Ann.Cas.1918B, 191. It is difficult for me to assent to the contention that the legislature by majority vote may create an office, agency, system, organization or program and then by a majority vote in the same session, include its expense money in a General Appropriation Bill as ordinary expense of one of the three departments. This in effect nullifies the two-thirds requirement almost completely, except for new construction, or those other few items covered by clauses similar to § 9, Art. XIII. This is not only a prediction; that it will be the result of the court's opinion is proven by the record to date. In the legislative sessions preceding 1965 the number of Special Appropriation Acts were as follows:

1953—132; 1955—126; 1957—134; 1959—125; 1961—138 and 1963—93. Excluding the acts for legislative expense and State Treasurer's bond premium, which could have been in the General Appropriation Bill as ordinary expenses, in 1965 there was one (1) Special Appropriation Act for $200. The concern over a constitutional brake or limit on legislative spending and appropriations was not left to chance or legislative fiat; nor to legislative responsibility, integrity or restraint. It was specifically, and the framers thought safely, provided for by the Constitution. In the debate W. W. Brookings stated, "It seems to me that (two-thirds vote) is an excellent provision; we want to guard the Treasury, if we want the people to vote for this Constitution. That is one of the best provisions in this Constitution". Const.Debates, Vol. 1, page 441. The merit of inserting this safeguard, rather than relying on other corrective measures is shown by the fact, even with it in the Constitution, the legislature violated it. Reading the constitutional debates convinces me the result reached was not their intention; I give the framers credit for more intelligence and foresight than to arrive at that conclusion.

Ground Water Surveys and Water Resources Commission, etc. items appear to be "works of internal improvement" and to

require a two-thirds vote under § 16, Art. XIII. Being in the minority, discussion or elimination of other items would serve no useful purpose.

Our system of government has been called one of checks and balances. Apropos to this, the court's construction gives a free hand to the legislative department to pass practically all appropriations by a majority vote, which the people may find impossible to change. Approval of this method of spending strikes down that clause with which the Constitution has undertaken to "guard the taxpayers" quoted in the majority opinion from In re Limitation of Taxation, 3 S.D. 456, 54 N.W. 417, and by which "our forefathers foresaw * * * the need to protect themselves against the enthusiasms of a majority of the legislature," State ex rel. Mills v. Wilder, supra. The result is amendment of the Constitution without compliance with Art. XXIII. The construction formerly accepted and followed by our state for many years, if it prove too limiting, unsatisfactory or unpopular, may be easily submitted to the people for change and amendment by the legislature. That is the only body which can set in motion the machinery for such change. The people may not do so. Const. Art. XXIII. One would be naive indeed to believe the legislature would institute proceedings to limit its power.

In proceedings for a writ of prohibition, a counterpart of the writ of mandamus, the right to the remedy must be clear, Bailey v. Lawrence County, 2 S.D. 533, 51 N.W. 331. The record before us is limited and includes only the legislative acts. The purpose of some of the appropriations not appearing from the record, plaintiff has not sustained that burden. Likewise the lack of any general legislation to support or govern several of the appropriations, which defendant's brief admits is necessary, was not urged or argued by plaintiff, so that question is not presented. See as to this: State ex rel. Fowler v. Eggers, 33 Nev. 535, 112 P. 699; Leckenby v. Post Printing & Publishing Co., 65 Colo. 443, 176 P. 490 and In re Opinion of the Justices, 300 Mass. 630, 15 N.E. 813.

As to the items held unconstitutionally included in the General Appropriation Bill, and eliminated by the majority, I concur; as to others not so eliminated and indicated above, I am compelled to dissent.